ELIZABETH R. BRUYN, Respondent. v. BENJAMIN RUSSELL and JAMES B. KEELER, as Executors of JACOB DE WITT, Deceased, Appellants.

52  17
57  520
52  17
60  281
52  17
90  381

52h      17
67 A.D¹⁰328

*Presumption of consideration in the words, in a note, "for value received" — none in favor of a party who attempts and fails to prove an actual consideration — conversation between the plaintiff and one of the executors of the maker of the note — comparisons of handwriting.*

In an action, brought upon a promissory note for $5,000, purporting to have been given to the plaintiff by the defendants' testator, the defenses were forgery and a want of consideration. Upon the trial the plaintiff produced the promissory note which contained the words "for value received," and, anticipating the attack by the defendants upon the consideration, attempted to establish it affirmatively by showing that the testator gave her the note because of a promise of marriage existing between her and the testator, and because he desired to reward the life-long acts of kindness which the plaintiff had bestowed upon him and the members of his household.

*Held,* that if the plaintiff had rested her case upon the presumption of consideration, which the note itself imported, the burden would have been cast upon the defendants to overcome that presumption by their evidence.

That when the plaintiff attempted to establish the consideration affirmatively, and the testimony of the plaintiff very plainly excluded the idea that any other consideration, except that shown by her, existed, the presumption of a valid consideration was no longer of any avail to her.

That, if it should be found that such consideration attempted to be shown had not sufficient legal validity to uphold the note, the words "for value received" could not be invoked to supply legal validity to a consideration otherwise ascertained to be invalid.

Upon the trial the plaintiff was allowed, against the objection and exception of the defendants, to testify that after the death of the testator she had a conversation with one of the defendants, an executor of the testator, in which she narrated to him the conversation between herself and the testator at the time he gave her the note, which embraced the alleged declarations of the testator to the plaintiff respecting her personal acts of kindness to him, the existing promise of marriage between them, and his desire to secure her a portion of his estate.

*Held,* that the court erred in admitting the evidence.

That as this testimony was not evidence that any such conversation took place between the plaintiff and the testator, but was only evidence of the conversation between her and the defendant; although the court instructed the jury thus

to regard and limit it, yet the verdict might have been influenced by her testi_mony, as to statements narrated to the defendant, without any evidence that the statements narrated were, in fact, true.

It was claimed that the defendant, one of the executors, admitted her narrative to be true.

*Held,* that as he had no personal knowledge of its truth, his admission could contribute no corroboration of it, and that one executor could not, by his admission, bind his co-executor.

*It seems* that an admission by executors to bind their estate must be part of the *res gestæ* of its actual settlement by the executors, and partake somewhat of the character of an estoppel.

The defendants offered to show, by expert testimony, that the note in question and a letter, admitted by the plaintiff to be in her handwriting, were both in the same handwriting.

*Held,* that, convincing as such evidence might be in certain cases, it was not admissible, as a comparison of handwriting is only admissible between the disputed writing in question and the genuine handwriting of the person purporting to be the writer of the disputed writing.

The defendants objected to the testimony of a witness who had frequently seen the testator write, and admitted that he had examined other signatures purporting to be those of the testator, which the witness had not seen him write and which were not produced upon the trial, who testified that he based his opinion principally upon the last-mentioned comparison.

*Held,* that as his testimony was not exclusively based upon such last-mentioned comparison, it was properly received.

APPEAL from a judgment in favor of the plaintiff entered, upon the verdict of a jury rendered at the Ulster County Circuit, in the office of the clerk of the county of Ulster on May 25, 1887; and, also, from an order entered on a motion made upon the minutes of the justice presiding at the trial for a new trial and to set aside the verdict, dated April 23, 1886; and, also, from an order made at a Special Term in the city of Troy on June 6, 1887, refusing to set aside the verdict upon an affidavit alleging coercion. The appeal from the latter order was not urged upon the argument.

The action was brought upon a promissory note for $5,000, purporting to have been given to the plaintiff by the defendants' testator. The defenses were forgery and a want of consideration.

*E. Countryman,* for the appellants.

*A. T. Clearwater,* for the respondent.

LANDON, J. :

The plaintiff produced the promissory note ; it contains the words " for value received." In the absence of any further testimony the presumption existed that the note was given upon sufficient consideration. (*Raubitschek* v. *Blank*, 80 N. Y., 478 ; *Underhill* v. *Phillip*, 10 Hun, 591 ; *Foote* v. *Valentine*, 48 id., 475.) This presumption would prevail until overcome by evidence sufficient to convince the jury that no valid consideration existed. If the plaintiff had rested her case upon the presumption of consideration which the note itself imports, then the burden would have been cast upon the defendants to overcome by their evidence that presumption, and, of course, if they could not do what it was incumbent upon them to do, the presumption would not be overcome, and its force would remain unbroken. But at the outset of the trial, the plaintiff, anticipating the attack by the defendants upon the consideration, attempted to establish it affirmatively. She undertook to show that the testator gave her the note, because a promise of marriage existed between them, and because he desired to recognize and reward the life-long acts of kindness which the plaintiff had bestowed upon him and the members of his household. The testator was a bachelor. The testimony of the plaintiff very plainly, and, perhaps, expressly excluded the idea that any other consideration existed. Such being the case, the presumption of a valid consideration which the note, unexplained, imported, was no longer of any avail to the plaintiff. If she failed to establish the actual consideration she asserted, she could not ask to recover, because the defendants had not affirmatively overcome the presumption of consideration which the note itself imported ; or, if establishing the particular consideration which she asserted, it should be found that such consideration had not sufficient legal validity to uphold the note, the words " for value received," in the note, could not be invoked to supply legal validity to a consideration otherwise ascertained to be invalid. The true consideration may be inquired into. It is presumed to be good until it is shown what it is, but when this is shown, whether by one party or the other, its true character is ascertained. If the good name under which the true consideration was disguised in the note itself could now, in the least degree, improve its real character, the inquiry would have been in vain ; the disguise would still deceive.

The object of the inquiry is to strip it off and disclose the real truth. Upon the evidence adduced we do not know whether the note was given upon the consideration suggested, but we do know that such a consideration, and no other, was attempted to be proved. We think, therefore, that when the learned trial judge instructed the jury that, in determining whether the note was given upon a valid consideration, they should consider that the note itself imported a consideration, and that the onus was upon the defendants to assail it, and that, aside from the consideration imported by the note itself, there were the facts and circumstances tending to show what the real consideration was, he left the jury to infer that the facts and circumstances strengthened the presumption of consideration which the note imported instead of displacing that presumption or weakening it, and thus prejudiced the case of the defendants.

Whether, if a valid promise of marriage existed between the parties, that would imply a sufficient consideration, without respect to the question whether the one promise was the consideration or inducement of the other, counsel did not deem it necessary to consider. Nor was the question discussed by counsel whether a promise to pay, made in consideration of a promise of marriage, which failed because of the death of one of the parties before the time appointed for the marriage, would present a case of failure of consideration. We, therefore, pass these questions to consider the admissibility of certain testimony which the plaintiff was permitted to give. She testified, notwithstanding the objection of the defendants, that after the death of the testator she had a conversation with one of the defendants, in which she narrated to him the conversation between herself and the testator at the time he gave her the note. She thus, under the form of giving her conversation with the defendant, gave to the jury her alleged conversation with the testator. The latter conversation embraced the alleged declarations of the testator to the plaintiff respecting her personal acts of kindness to him, the existing promise of marriage between them, and his desire to secure to her a portion of his estate. The trial judge correctly said that this was not evidence that any such conversation took place between the plaintiff and the testator, but was only evidence of the conversation between her and the defendant, and he instructed the jury thus to regard and limit it. But it was the only explicit evidence of any

engagement of marriage between the plaintiff and the testator, and it is not easy to believe, in view of the verdict, that it was not the most influential in producing it. If so, then the verdict rests upon her testimony of statements narrated to the defendant, without testimony that the statements narrated were true. It is claimed that the defendant, one of the executors, admitted her narrative to be true; but, confessedly, he had no personal knowledge of its truth, and his admission could, therefore, contribute no corroboration of it.

Here are two executors. One executor cannot, by his admission, bind his co-executor. (*Finnern* v. *Hinz*, 38 Hun, 465, and cases cited; *Potter* v. *Greene*, 20 N. Y. St. Rep., 410.) A sole executor cannot bind the estate by his admission to a third party having no interest. (*Church* v. *Howard*, 79 N. Y., 415.) We infer from the cases that an admission by executors to bind their estate must be part of the *res gestœ* of its actual settlement by them, and partake somewhat of the character of estoppel. They are to settle the estate of their testator as the testator left it. They should not by listening, without dissent or with approval, to the interested assertions of claimants, overreach the acts of the testator himself and give to them a character which, but for their complaisance, could never be fixed upon them. But, within the cases cited, the testimony was not competent. For this error the judgment must be reversed.

We have examined the various assignments of error respecting the proof of the testator's handwriting and the genuineness of the signature to the note. There is a sort of false courtesy shown by the law to the pretenders to expert knowledge. Witnesses are criticised as failing to show themselves to be experts. They had, in some degree, the knowledge which an expert ought to have, and, in the present state of the law, we do not think the court erred in receiving their opinions. The defendants offered, by expert testimony, to show that the note in question and a letter admitted by the plaintiff to be in her handwriting were both in the same handwriting. Convincing as such evidence might be in certain cases, it does not seem to be admissible. Comparison of handwriting is only admissible between the disputed writing in question and the genuine handwriting of the person purporting to be the writer of the disputed writing. (*Peck* v. *Callaghan*, 95 N. Y., 73.)

The defendants object to the testimony of a witness who had

frequently seen the testator write, but who admitted that he had examined other signatures purporting to be the testator's, but which the witness had not seen him write, and which were not produced upon the trial. He testified that he based his opinion principally upon the last-mentioned comparison. As his testimony was not exclusively based upon such comparison, we do not think it could be stricken out. He had the meager qualifications which suffice to his competency, and he had acquired confidence and a firmer opinion by irregular methods. However much unreliable knowledge he had acquired, we do not think it disqualified him, in the absence of testimony that he based his opinion wholly upon it.

Judgment reversed, new trial granted, costs to abide the event.

LEARNED, P. J., concurred; INGALLS, J., takes no part.

LEARNED, P. J. (concurring in the foregoing opinion):

I would add that an examination of the expert's testimony, and of the exhibits produced on the trial and shown on the argument, has given me a strong impression against the genuineness of the alleged signature of the deceased. In cases like the present we must always expect that the alleged signature will have a resemblance to genuine signatures, even if not genuine itself. The opinions of those who have seen the person write (whose alleged signature is in question) are little more than statements of such resemblance, unless based on a careful study of the habits of the person in respect to his handwriting, as shown in genuine specimens. How careful such a study may be is shown in Twistleton and Chabot, " Handwriting of Junius."

Judgment reversed, new trial granted, costs to abide event.