JULIA A. SHAW, RESPONDENT, v. AGNES C. BRYANT AND OTHERS, APPELLANTS, IMPLEADED WITH ANOTHER, DEFENDANT.

*Amendments of a complaint — what is a new cause of action — review of a decision upon an application for an amendment — infants are chargeable only for necessaries — estoppel — rules of the court.— Code of Civil Procedure, sec. 723.*

Julia A. Shaw, who claimed to have furnished certain necessaries to the children of one Bryant, brought an action to restrain a trust company, which held some trust moneys belonging to the children, from paying them to the father or to the children, and also to obtain a direction that the company pay her claim

from the income of the trust fund. The referee to whom the action was referred allowed an amendment to the complaint which charged the father with a conversion of moneys paid by the trust company to him as a supposed general guardian of his children, asserted that an individual liability existed upon the part of the father as to a part of the claim, and asked judgment to some extent against him personally.

*Held,* that the effect of the amendment was to introduce a new cause of action.

That such an amendment was improper under section 723 of the Code of Civil Procedure.

That the proper way to review the referee's decision upon the amendment was by appeal.

In deciding the action the referee divided the plaintiff's demand into three parts and charged one part against each defendant, the father and his two children.

*Held,* that this was improper.

That it was the referee's duty to select from the plaintiff's bills the items which were properly and legally chargeable to the infants, and that the fact that such a separation was difficult was immaterial.

That the father, a general guardian appointed in another State, but who had never qualified, could not estop his children by a certificate that the final balance of the plaintiff's account was correct.

The rules of the court, as to putting the evidence in narrative form, etc., must be strictly followed in preparing a case on appeal.

APPEAL by the defendants, Carolan O'B. Bryant, Agnes C. Bryant and Amanda I. Bryant, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 14th day of December, 1891, in favor of the plaintiff.

The referee to whom the action was referred found the following conclusions of law :

I. That the plaintiff is entitled to judgment against the defendant Carolan O'Brien Bryant for the sum of $15,000, with interest thereon from the 2d day of April, 1885, being the whole sum due the plaintiff, and amounting, at the date of this report, to $20,995, and judgment against him is directed accordingly.

II. That the plaintiff is entitled to judgment against the defendant Agnes Clare Bryant for the sum of $5,000, with interest thereon from the 2d day of April, 1885, amounting, at the date of this report, to $6,998.33, and judgment against her is directed accordingly.

III. That the plaintiff is entitled to judgment against the defendant Amanda I. Bryant for the sum of $5,000, with interest thereon from the 2d day of April, 1885, amounting, at the date of this report, to $6,998.33, and judgment against her is directed accordingly.

But the payment of the sum of $15,000, with interest thereon from April 2, 1885, amounting, at the date of this report, to $20,995, together with the costs of this action, to be adjusted, will satisfy and discharge each and all of the judgments above directed.

I further decide and determine that the plaintiff is entitled to judgment against all of the defendants, except the Farmers' Loan and Trust Company, jointly for the costs of this action, and judgment is directed accordingly.

*George Norris*, for the appellants.

*J. A. Shoudy*, for the respondent.

Patterson, J.:

The judgment entered upon the report of the referee in this action must be reversed. There are two fatal errors pointed out by the appellants. The first consists in the allowance by the referee of an amendment which radically changed the issues raised by the pleadings and allowed a new cause of action to be set up in the amended complaint.

As the original complaint was framed the action was for an injunction to restrain the Farmers' Loan and Trust Company from paying over to the other defendants certain moneys therein referred to, and it was also asked that the court direct the said company to pay out of trust funds in its hands, belonging to the infant children of C. O'B. Bryant, the amount of the claim the plaintiff asserted against them for board and lodging furnished and moneys advanced for the necessary support, maintenance, education and medical attendance of such infant defendants, for a period intermediate the 17th of June, 1882, and 2d of April, 1885, and to require the said trust company to set apart and pay over to the plaintiff such portion of the annual income of the fund or of the securities in which it was invested as to the court might seem proper. Upon the answers interposed to this complaint the issues were referred. After much time spent in the trial of the case before the referee an application was made by the counsel for plaintiff to amend the complaint; and the referee ordered that it be amended by allowing allegations to be inserted therein, which charged upon the defendant C. O'B. Bryant a conversion of moneys paid by the Trust Company to him as the sup-

posed general guardian of his infant children, to be applied to their maintenance and support, but which it was alleged he appropriated to himself; and also allegations which would devolve upon the defendant C. O'B. Bryant a personal liability for the whole or some portion of the indebtedness the plaintiff claimed to be due her; and the amended complaint asks judgment, not only that the plaintiff may have a lien upon the fund or the proceeds thereof, but also against the defendants and each of them, except the Farmers' Loan and Trust Company, for $15,000 and interest, and in case the court should determine that the infant defendants were not liable to pay the whole of the amount claimed, that the plaintiff have judgment against them for the amount which should be paid by them, and against the defendant C. O'Brien Bryant for the remainder of the said $15,000.

The difference between the two complaints is most marked, and by the amended complaint a new cause of action was introduced, namely, one to enforce against the father personally the claim or some part of it, which by the original complaint was sought to be charged only upon the funds or securities in the hands of the Farmers' Loan and Trust Company. By this amendment the defendant C. O'B. Bryant was called upon to litigate a matter which was not in any way connected with the cause of action as set forth in the original complaint. It was entirely beyond the province of the referee to permit such an amendment. That a court or referee has no power to permit, on the trial, an amendment to a complaint or answer which changes the cause of action or defense, or introduces a new cause of action or defense, follows from the terms of section 723 of the Code of Civil Procedure, and this view has been taken in *Reeder* v. *Sayre* (70 N. Y., 181); *Gas-Light Company* v. *Railroad Company* (51 Hun, 119); *Price* v. *Brown* (98 N. Y., 388); *Freeman* v. *Grant* (30 N. Y. State Rep., 143); *Chapin* v. *Dobsou* 78 N. Y., 74). That the amendment allowed by the referee introduces a new cause of action is beyond controversy; the original complaint being only for equitable relief and the amended complaint claiming a personal judgment against one of the defendants by reason of acts set forth in that amended complaint which would render him liable in a common-law action. Such defendant is not debarred from reviewing the decision of the referee by appeal.

He could not have moved against the order of the referee, as the proper way of reviewing the decision is by exception and an appeal from the judgment. (*Quimby* v. *Claflin*, 77 N. Y., 270.) Nor has he waived his right by answering. He did so on compulsion and under protest.

The second, and quite as serious, error appearing upon this record is the conclusion of the referee that the amount of the plaintiff's demand should be divided upon some supposed equitable principle into three parts, and one of the three parts charged against each of the defendants, namely, the two infant children and C. O'B. Bryant. It appears in the proofs that the father and his two infant children boarded with the plaintiff at her hotel during the whole period between the two dates above mentioned, and that during that time bills were incurred not only for the board, lodging, education, medical attendance and maintenance of the infant children, and for moneys advanced to them or for them to pay dressmakers' and other bills, but that during a great part of the time the father also resided there, and moneys were advanced to him, and expenses were incurred on his account, and he became a debtor for large sums which could not be charged against the infants. The referee has proceeded in making this arbitrary divison upon the asserted impossibility of separating the items. There should be no such insurmountable difficulty in ascertaining what was chargeable exclusively against the infants. Their estate is not to be burdened with charges except such as are actually and positively proven to be properly so chargeable. All that could be recovered against them or be made payable out of their property would be such amounts as were advanced or such debts as were incurred for necessaries. And when the plaintiff undertook, upon the representations of their father, to supply them with such necessaries, and upon the undertaking that she would be paid out of the infants' property, she was bound to know that the extent of the liability of the infants, or to which their property might be held, would be only for such things as would come within the description of necessaries for such infants, in view of their needs as affected by their station in life. It was the duty of the referee to require positive proof that each of the items sought to be enforced against either of these infant children

came within the requirement stated. The certificate of their father that the final balance of $15,000 was correct, and the supposed statement of an account binding upon the infants by reason of that certificate, does not avail the plaintiff in any way, as the referee rightly held. Proof of each item was required. Manifestly, the account includes charges against the father. He had no power to give such a certificate, and it does not estop the children or their guardians *ad litem.* Mr. Bryant was not a general guardian having the standing to make such a certificate; he was not authorized to receive the money from the trust company as such guardian. He had been appointed in New Jersey by an order of the court, but had never qualified, and, as was held in *Foley* v. *Mutual Life Insurance Company* (18 N. Y. Supp., 615), he could not do anything, either in the way of the receipt of moneys or by acts, to affect the estate or property of the infants in the alleged capacity of general guardian. It would have required, perhaps, some little trouble and industry on the part of the referee to pick out from the long account rendered the various items proven to be properly charged against the infants; but that is no reason why the whole account should be massed and they held liable for two-thirds of it.

We have been compelled, in the examination of this case, to wade through a record which consists of almost 500 pages of what is simply a transcript of stenographer's minutes, and nearly 200 pages more of exhibits, and are constrained to say that we have never had the misfortune of seeing a record more carelessly compiled, or thrown together in more utter defiance of the rules of the court relating to the preparation of appeal papers There are no less than eighty pages of this record, consisting of colloquies between counsel and the referee; of arguments and affidavits made on motions to postpone hearings; of oral arguments of counsel or incidental questions arising during the progress of the hearings before the referee, and of matters utterly irrelevant to the merits of the cause. Everything in the way of testimony is recorded by question and answer, and not in the narrative form required by the rule of the court. We would be justified in refusing to consider the case at all on this record, and in sending it back for resettlement, as was done in *Meade* v. *Shay* (26 Hun, 393) and *Smith* v.

*New York Central and Hudson River Railroad Company* (30 Hun, 144), and would do so, but for the fact that the interests of the parties have been greatly compromised already by the delays had in the cause. The attention of the profession has been called time and time again to the condemnation by the courts of records on appeal prepared as this is, and there is no excuse for the violation of the rule in this particular action.

The judgment appealed from is reversed, with costs to appellants to abide the event; but if the defendants ultimately succeed, the bill for printing the case and exhibits on this appeal shall not be taxed as disbursements. A new referee must be appointed to hear and determine the cause.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

So ordered.

---

IN THE MATTER OF THE APPLICATION OF THE BOARD OF RAPID TRANSIT RAILROAD COMMISSIONERS, FOR THE CITY OF NEW YORK, FOR THE APPOINTMENT OF THREE COMMISSIONERS TO DETERMINE WHETHER A RAPID TRANSIT RAILWAY OR RAILWAYS FOR THE TRANSPORTATION OF PERSONS AND PROPERTY, AS DETERMINED BY SAID BOARD, OUGHT TO BE CONSTRUCTED AND OPERATED.

*Rapid Transit Act, chapter 4 of 1891 — as applied to New York city — discretion of the commissioners appointed by the court — effect of a deviation from a general plan to which an owner has consented — possibility of failure to complete the road — consequential damages to abutting owners — compensation for soil taken out by a tunnel — feasibility of the project — effect of an abandonment of one of the routes adopted by the rapid transit commissioners.*

The Supreme Court at General Term appointed, under section 5 of chapter 4 of the Laws of 1891, commissioners to determine whether a railroad ought to be constructed and operated over certain routes presented by the rapid transit railroad commissioners of the city of New York.

Upon a motion to confirm the report of the commissioners so appointed in favor of the construction of a road over a portion of the routes proposed:

