## 178 DRAKE v. SIEBOLD.

Judgment appealed from reversed and new trial granted, with costs to abide the event, unless within twenty days the plaintiff stipulates to reduce the recovery of damages to the sum of $4,542.80 and interest thereon from March 21, 1885. If such stipulation is given the judgment is modified accordingly and as so modified affirmed, without costs of this appeal to either party.

HARVEY F. DRAKE and Others, Appellants, v. SEVERIN SIEBOLD, Respondent.

*Conspiracy within the meaning of section 168 of the Penal Code — future prices, how regulated — contract for the sale of coal — when void — when not enforced though the invalidity is not pleaded — power of a referee to allow an amendment of an answer.*

Where there exists in a city an association of retail coal dealers, the object of which is to fix a uniform price for coal sold in the city in order to prevent competition among the retail dealers in coal, such agreement, followed by overt acts on their part, constitutes a conspiracy within the meaning of section 168 of the Penal Code, and the members of such association are guilty of a misdemeanor.

Ordinarily persons in their dealings may adopt such method as they please to regulate the measure of compensation or prices in the future, through the period of the operation of their contracts, but they cannot effectually do so to accomplish an unlawful purpose.

As the business of buying and selling coal is in itself legitimate, the fact that the prices adopted between the vendor and the vendee are in furtherance of a scheme of an association to regulate the price thereof would not deny to the seller all remedy for non-payment of the price of the coal delivered by him under such contract; but the contract, so far as the prices therein provided for are founded or dependent upon the prices fixed by such association, is ineffectual and void.

When it appears that a contract which is the subject of an action is void as against public policy, the court will decline to enforce it by judgment, although such infirmity is not pleaded, if the invalidity of the contract appears on the

presentation thereof by the plaintiff upon the trial, but if the contract as alleged and proved by the plaintiff is valid on its face, the defense that it is in fact against public policy and illegal is not available unless specially pleaded.

A referee has no power upon the trial of an action before him to allow the answer of a defendant to be amended where the allegations of the amendment constitute a new defense to the action.

The defendant, by his answer to the complaint in an action brought to recover damages for the alleged breach of a contract made between the parties, admitted that he signed the instrument set forth in the complaint and denied each and every other allegation of the complaint. He did not allege that the contract was invalid for any cause. At the close of the evidence the defendant moved to amend his answer by inserting an allegation to the effect that the contract was based in part upon a criminal conspiracy to injure trade and commerce, and that it was against public policy and void.

*Held,* that the allegations of the amendment constituted a new defense to the action.

APPEAL by the plaintiffs, Harvey F. Drake and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 28th day of May, 1894, upon the report of a referee dismissing the plaintiff's complaint upon the merits, and also from an order made by the referee allowing the defendant to amend his answer.

The action was brought to recover damages resulting from the alleged breach of a contract made between the parties in April, 1888, whereby the plaintiffs agreed to sell and deliver to the defendant, who agreed to receive, at the plaintiffs' coal yard in the city of Rochester, from 2,000 to 3,000 net tons of anthracite coal on or before May 1, 1889, upon these terms: " For all coal delivered during the months of May, June, July and August, 1888, the price shall be as follows: For grate and egg, $3.65 per ton of 2,000 lbs.; for stove and nut, $3.88 per ton of 2,000 lbs.; for pea, $2.88 per ton of 2,000 lbs.

" For all coal delivered during each of the succeeding months after August 31, 1888, and prior to May 1, 1889, the prices shall be the prices as quoted above, with the regular retail circular advances as may be made from time to time after May 1, 1888, in the Rochester market added thereto ; that is, if the Rochester retail price should advance 25c. per ton June 1, over the present price, then such advance of 25c. per ton shall be added to the prices named in this contract for all coal delivered after August 31, 1888; likewise each succeeding advance in the Rochester retail price shall

be added to prices named herein on all coal delivered after August 31, 1888."

The defendant agreed to receive the coal upon those terms, and to pay on the fifteenth day of each month for all coal received the preceding month, and to pay on or before August 1, 1888, $1,500 or $2,000, to be applied to his credit for coal to be delivered to him after August 31, 1888.

The contract also provided that it was subject to the usual conditions on the back of coal circular thereto attached, amongst which was this condition: "2. Price of coal will be the rates as fixed by circulars from time to time, and will be charged at circular prices at time of shipment, regardless of date of orders."

The plaintiffs alleged that they delivered to the defendant, and he received, nineteen and one-half tons of coal, and that the defendant refused to further perform the contract on his part. The defendant alleged, by way of counterclaim, a breach of the contract by the plaintiff.

*Albert H. Harris,* for the appellants.

*H. G. Pierce,* for the respondent.

BRADLEY, J.:

The referee found the facts in support of the plaintiffs' alleged claim for breach of the contract by the defendant, but determined that the contract was illegal by reason of the fact as found by him, that during the year commencing May 1, 1888, there existed a combination of all the coal dealers in Rochester (except a few small dealers who sold by the bushel), including the parties to the action; that the combination was known as the Rochester Coal Exchange; that at meetings held monthly the retail price of coal was fixed; that it was agreed among the members of the association that coal should not be sold in the city of Rochester by them for prices less than those fixed by it; that a disregard of the action of the association in that respect subjected the member violating it to some fine or penalty, and that the object of the association was to fix a uniform price for coal in the city, and to prevent competition among the members of the Coal Exchange who dealt in coal, which was during that time an article of prime necessity to the public. And

the referee further found that the retail price of coal, as determined by the association, entered into and formed a part of the consideration for the contract mentioned in the complaint.

The evidence warrants the conclusion that such an association existed in Rochester for the purposes so found, and that substantially all the dealers in coal there, including the parties to this action, were members. And as the object of it was to destroy and prevent competition in the sale of an article of prime necessity, the combination between the dealers, followed by overt acts, was a conspiracy within the meaning of the statute, which provides that when two or more persons conspire "to commit any act injurious * * * to trade or commerce," they are guilty of a misdemeanor. (Penal Code, § 168, subd. 6; *People* v. *Sheldon*, 139 N. Y. 251.)

It is urged, on the part of the plaintiffs, that the contract in question was not tainted by any relation to the association; that it was independent of it, and that reference to the circular was incidentally made to designate as between the parties the standard prices during the time their contract was to run. It is true that persons in their dealings may ordinarily adopt such method as they please to regulate the measure of compensation or prices in the future through the period of the operation of their contracts. This they cannot effectually do to accomplish any unlawful purpose. The only object of the association, known as the Rochester Coal Exchange, was to govern the price of coal within the city, and make the retail price of that article there uniform. The primary purpose was to prevent competition in the trade. The parties to this action being members of it, sought, by their contract, to accomplish, so far as related to their dealing as represented by it, the purpose for which the Coal Exchange was organized and existed. One of the considerations of the sale and purchase seems to have been the prices fixed from time to time by the association for the purposes before mentioned. It, therefore, cannot be said, in view of the facts which the referee was permitted to and did find, that the contract was made independently of any relation to the association, or that it was free from any consideration in support of its purpose.

In *Armstrong* v. *Toler* (11 Wheat. 258), cited by the plaintiffs' counsel, Mr. Chief Justice MARSHALL discussed the subject of the validity of contracts having relation to illegal acts and tainted by

## 182 DRAKE v. SIEBOLD.

them. And it was there held that if a promise be unconnected with the illegal act, and is founded upon a new consideration, it is not tainted by the act, although it was known to the person to whom the promise was made and he was the contriver and conductor of the illegal act.

If, therefore, a person knowing all the circumstances had lent to the defendant in the present case the money to pay for the coal, pursuant to the contract in question, or had paid the plaintiffs for the coal for the defendant, upon the promise of the latter to repay him, the promise would, within the doctrine of that case, be effectual to support an action, because, as there held, the lending of the money, or making the payment, would have constituted a new consideration and the foundation of a new contract, which could not be vitiated by a knowledge of the purpose for which the money was so loaned or paid.

By taking the relation which the parties had to the association as its members, it would seem that they intended to observe in their dealing in coal the prices fixed by it and to adopt them in making their contract. They did so by the contract in question, and to that extent they effectuated the purposes of the illegal combination by the means contemplated by it. And,' so far as related to the price, the contract must be infected by the unlawful object of the association, and be subject to the consequences of it.

In *Central Shade Roller Co.* v. *Cushman* (143 Mass. 353) one of the features distinguishing the principle of that case from that of the present one, is that the agreement in question there did not refer to an article of prime necessity, nor to a staple of commerce, or to merchandise to be bought and sold by the parties in the market, but to certain fixtures manufactured by them.

The other cases cited by the learned counsel for the plaintiffs do not seem to have any necessary application in support of his contention on the subject.

As the business of selling and buying coal is in itself legitimate, the fact that the price adopted is in furtherance of the scheme of the association would not deny to the seller all remedy for non-payment of the coal delivered upon such contract.

The view taken of the contract in question is that so far as the prices are founded or dependent upon the circular before mentioned of the Rochester Coal Exchange, it is ineffectual and void.

There is a further question of pleading presented. The defendant by his answer admitted the partnership of the plaintiffs, and that he signed the instrument set forth in the complaint, and denied each and every other allegation of the complaint. He did not allege that such instrument (which is the contract in question) was invalid for any cause. At the close of the evidence the defendant moved to amend his answer by inserting an allegation to the effect that the contract was based in part upon a criminal conspiracy to injure trade and commerce, and is against public policy, and void. The amendment was allowed by the referee against the objection and exception of the plaintiffs. The question arising upon the exception is here for consideration. (*Quimby* v. *Claflin*, 77 N. Y. 270.)

The allegations of the amendment constituted a new defense. And if it was essential to the support of the conclusion of the referee dismissing the complaint, the exception was well and effectually taken, for the reason that it was not within the power of the referee to allow the answer to be so amended. (Code Civ. Proc. §§ 723, 1018; *Shaw* v. *Bryant*, 65 Hun, 57.)

It has been held that when it appears that a contract which is the subject of an action is void as against public policy, the court will decline to enforce it by judgment, although such infirmity is not pleaded. (*Oscanyan* v. *Arms Co.*, 103 U. S. 261; *Russell* v. *Burton*, 66 Barb. 539.) But in those cases the invalidity of the contracts there in question appeared by the presentation of them by the plaintiff at the trials. In that respect they were distinguished from *Milbank* v. *Jones* (127 N. Y. 370) where it was held that when the contract as alleged and proved by the plaintiff is valid on its face, the defense that it is in fact against public policy and illegal is not available unless specially pleaded.

The rule seems to be that a plaintiff must, to support his action, allege and prove a contract valid on its face. If he fails to do so his complaint may be dismissed although the invalidity of the contract is not pleaded as a defense. But otherwise to enable the defendant to raise the question upon his evidence it must be alleged in the answer.

The contract as set forth in the complaint was not invalid on its face. The evidence on the part of the plaintiffs does not appear in

the record, but the referee finds upon it facts which entitled the plaintiffs to recover.

The evidence on the part of the defendant upon which arises the charge of the illegality of the contract was not objectionable, as it related to the source of the circular of retail prices into which the defendant had the right to inquire, and for that reason the plaintiffs are not prejudiced upon this question by not taking objection to the evidence. (*Honegger* v. *Wettstein*, 94 N. Y. 252.)

These views lead to the conclusion that the referee erred in allowing the amendment, which substantially changed the defense alleged in the answer.

And for that reason the judgment should be reversed and a new trial granted, costs to abide the event.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment appealed from reversed and a new trial ordered, with costs to abide the event.