JULIA A. SHAW, Respondent, *v.* AGNES CLARE BRYANT and Others, Appellants, Impleaded with THE FARMERS' LOAN AND TRUST COMPANY of the City of New York.

*Comparison of handwriting with genuine handwriting of the alleged forger in evidence for another purpose — infants living at a hotel with the father — hotel-keeper need not show the exact amount chargeable to each — board of a governess.*

Prior to the passage of chapter 36 of the Laws of 1880, it was the rule in the State of New York that comparisons might be instituted between a disputed signature and other writings, which had been shown to be genuine, and which had been admitted as evidence in the case upon the issues involved, and not solely for the purpose of comparison.

In an action brought prior to the passage of chapter 555 of the Laws of 1888, which enlarged the scope of chapter 36 of the Laws of 1880, the plaintiff claimed that a release purporting to have been executed by the plaintiff's agent, upon which a defense of accord and satisfaction was based, was a forgery. It appeared that an exhibit in the case, admitted to be in the genuine handwriting of the person whom the plaintiff charged with the forgery of the release, was received in evidence without objection, and not solely for the purpose of a comparison of handwriting.

*Held,* that, after such admission, a comparison might be made between the exhibit and the disputed release and its signature, in order to enable the plaintiff to establish affirmatively that the release was in the handwriting of the person charged with having forged it.

When two infants are living with their father, who describes himself as their general guardian, at a hotel conducted upon the European plan, the hotelkeeper is not bound to show as a condition of recovery against the estate of the infants, how much should be charged against each one for the ordinary expenses of living.

Where a governess has been employed for such infants, and the father makes no proof as to whether or not he agreed to pay all or any part of the charges for the meals and room furnished to the governess, and it is impossible to determine the cost of the meals eaten by her, it is not erroneous to divide the expenses incurred upon her behalf equally between the father and his children.

APPEAL by the defendants, Agnes Clare Bryant and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of November, 1894, upon the report of a referee.

*George Norris* and *D. J. Coughlan,* for the appellants.

*Esek Cowen,* for the respondent.

FOLLETT, J.:

This action was begun June 29, 1885, to charge the funds belonging to Agnes C. Bryant and Amanda I. Bryant, infants, in the custody of the Farmers' Loan and Trust Company, with the value of board and rooms furnished them and for money advanced and expended for necessaries; also, to recover a judgment against Carolan O'Brien Bryant for board and rooms furnished and money advanced to him. The action was tried before a referee and a judgment recovered by the plaintiff, which was reversed. (65 Hun, 57.) Afterwards the Special Term granted leave to serve an amended complaint, which order was affirmed. (20 N. Y. Supp. 785; S. C.

*sub. nom., Shaw* v. *Grant,* 49 N. Y. St. Repr. 404.) The infants became of age before the trial which resulted in the judgment under review, their estate was transferred to them and the action was discontinued against the Farmers' Loan and Trust Company.

Carolan O'Brien Bryant is the father of Agnes C. Bryant and Amanda I. Bryant, who, in 1882, were infants, Agnes C. then being about fourteen and Amanda I. about thirteen years of age. The mother of the infants died before 1882. In March, 1882, the infants became entitled to $180,000 ($90,000 each) from the estate of John Anderson, their maternal grandfather. From 1880 to 1890 the plaintiff was the proprietor of the Grand Union Hotel in the city of New York, and between July 17, 1882, and April 2, 1885, the defendants occupied rooms in and boarded at that hotel, and during a portion of that time the young ladies had a governess, who also roomed and boarded there, taking her meals with the family. The referee found that the value of the board and rooms furnished the three defendants and the governess, together with the moneys advanced for the necessary support and education of the infants, was, over and above all payments, $15,000, which was due April 2, 1885, no part of which has since been paid.

It was established by Exhibit C, introduced by the plaintiff, and by Exhibit No. 1, introduced by the defendants, that January 29, 1885, a settlement was had, and $15,270.43 was found due the plaintiff. The following is a copy of Exhibit C:

" C. O'B. Bryant, Esq., Guardian,

" *To* Grand Union Hotel, *Dr.*

" 1884.

" Dec. 31. To amount of *a/c* as rendered.............. $6,565 56
" 1885.
" Jan. 7. " Meals and room, 1 week....... $82 95
          14. "    "    "    "    ....... 75 25
          21. "    "    "    "    ....... 84 25
          28. "    "    "    "    ....... 79 70
          29. "    "    "   1 day ....... 10 14
                                        ———— 332 29

                                        $6,897 85

| | | | | |
|---|---|---|---|---|
| Jan. 29. | To 29 days int. on ℀ to Oct. 29, '84.. | $8,168 75 | $34 90 | |
| | " 26 days int. on Nov. ℀....... | 407 40 | 1 47 | |
| | | $8,576 15 | $36 37 | |
| | Less 29 days' int. on............ | 2,729 16 | 11 99 | $24 38 |
| " 1884. | | | | $6,922 23 |
| " Dec. 31. | To amt. of cash ℀ rendered..... | $8,216 34 | | |
| " 1885. | | | | |
| " Jan. 29. | " 29 days' int. on ℀ to to Dec. 1, '84..... | $7,886 17 | 31 56 | |
| 7. | " Cash.............. | 100 00 | | |
| | 22 days' int........ | 30 | | |
| | | | 100 30 | |
| | | | | 8,348 20 |
| | | | | $15,270 43 |

"NEW YORK, *Jan. 29th,* 1885.

" I have examined the above bill and find it correct and approve the same. The charges therein were for supplies and maintenance of my two children, Agnes C. and Amanda I. Bryant, for whom I am the general guardian; and were furnished under and by my direction. The moneys therein advanced were for the same purposes.

                    " CAROLAN O'B. BRYANT,
                              " *Guardian.*"

Defendants' Exhibit No. 1 is a duplicate of plaintiff's Exhibit C, except that there was indorsed thereon the following:

" Copy signed and approved by C. O'B. Bryant, Guardian.
                              " J. E. SHAW."

Mr. Bryant testified that this indorsement, including the signature, was written by James E. Shaw.

April 2, 1885, when the defendants left the plaintiff's hotel, another settlement was had, as shown by defendants' Exhibit No. 3, of which the following is a copy:

" C. O'B. BRYANT, ESQ., GUARDIAN,

　　　　　　" *To* GRAND UNION HOTEL, *Dr.*

" 1885.

" Feb. 17. To balance as rendered..................　$15,327 66

" Apl. 2, '85, add 44 days at 5 %..................　　　93 67

" Apl. 2. Difference of int. of 1 % on int. paid at 6 %

　viz.: 450⅙....................................　　　75 00

　　　　　　　　　　　　　　　　　　　　　　　　$15,496 33

" Feb. 4. To meals & room as rendered.....　$77 45

　　　　　Less Jan. 29 included in previous

　　　　　bill..... . ....................　　10 14

　　　　　　　　　　　　　　　　　　　　　　$67 31

　" 11. Meals & Room, 1 week...........　　75 00

　" 18.　"　"　"　..........　　76 40

　" 25.　"　"　"　..........　　76 45

Mch. 4.　"　"　"　..........　　71 72

　" 11.　"　"　".　..........　　 7 00

　" 18.　"　"　"　..........　　 7 00

　" 25.　"　"　"　..........　　 7 00

Apl. 1.　"　"　"　..........　　 7 00

　" 2.　"　"　1 d.............　　 1 00

　　　　　　　　　　　　　　　　　　　　　　　　　　395 88

　　　　　　　　　　　　　　　　　　　　　　　$15,892 21

　　　　　　　　　" NEW YORK, *April 2nd,* 1885.

　" Received from Carolan O'B. Bryant his check for eight hundred and ninety-two ²¹⁄₁₀₀ dollars on account of the above bill, leaving due on April 2, 1885, of fifteen thousand dollars.... $15,000.00.

　　　　　　　　　" (Signed) JULIA A. SHAW, by

　　　　　　　　　　　　　" JAMES E. SHAW, *Atty.*

" Cr. (Adjusted and Deffrd) By amount deferred

　Interest acct. computed to Jan. 1, 1888........　$8,402 00

" By tax lease settlements, loan and purchase com.

　acct. as rendered and adjusted, not to exceed...　6,508 00

　　　　　　　　　　　　　　　　　　　　　　　$15,000 00 "

By whom and when the sentences beginning with the abbreviation
" Cr." and ending with " $15,000.00 " were written, was a disputed
question.    Carolan O'Brien Bryant testified that they were written
by one of the plaintiff's clerks.

The sum represented by this statement — $15,000 — was the
amount for which the referee rendered a judgment against the
defendants.

An accord and satisfaction of this admitted amount was not
pleaded as a defense in the original answers, but July 23, 1886,
James E. Shaw, plaintiff's husband and agent, died, and in the
amended answers served February 25, 1893, the defendants pleaded
an accord and satisfaction entered into with him on or about April
2, 1885.    To establish this defense the defendants put in evidence a
statement of account marked Exhibit No. 2 of which the following
is a copy :

" C. O'B. BRYANT, ESQ., GUARDIAN,

" *To* GRAND UNION HOTEL, *Dr.*

"1885.

" Jan. 29.    To amount of % as rendered............    $15,270 43

" Feb. 17.    Add 19 days' Int. 5% ............ $40 30

Difference of Int. of

1% on Int. paid at

6%        "        ........    $230 00

"        "        ........    450 00

"        "        ........    1,044 17

⅙ of $1,724 17    287 36

                                                            327 66

                                                 $15,598 09

" Feb. 17.                     *Cr.*

By check for .............................    270 43

                                                 $15,327 66

" Credits balanced and deferred.

" C. O'B. BRYANT in account with JULIA A. SHAW.

"1885.                         *Dr.*

" Jany. 29.    To balance due Gr'd U. Hotel,

cert. as.................. $15,270 43    15,000 00

*Cr.*

"Feby. 17.    By credits accrued and accru-
                ing deferred to final payment
                of mortgages June 1, 1888,
                as adjusted...............$15,000 00

              Difference cash..............    $270 43
              Balance deferred as above $15,000 to
                end of term........................  15,000 00

              Balanced and closed without recourse to
                new a/c remainders:.................     327 66

"Satisfaction herein acknowledged and duplicate exchanged in release of all claims and accounts; difference in interest adjusted cash, signed and witnessed in each other's presence. One dollar consideration received in hand.

"NEW YORK, *Feb.* 17, 1885.      JAMES E. SHAW, *Att'y.*"

Mr. Bryant testified that this exhibit was in the handwriting of one of plaintiff's clerks down to and including the figures " $15,327.66," and that from that point down to the figures " 327.66," the exhibit was in his handwriting. He testified that the paragraph beginning with the word "satisfaction" and ending with the figures "1885" was written by "some of Mr. Shaw's people," but he did not know by whom. He also testified that the signature "James E. Shaw, Att'y," was written by Mr. Shaw, and that he (Bryant) saw him write it.

Whether the signature to the above receipt was genuine or forged, and whether the paragraph preceding the signature was written by Carolan O'Brien Bryant, were sharply contested issues on the trial, and the referee found that the signature was a forgery. It is asserted that this finding is contrary to the weight of evidence. After examining the original document, reading the evidence and considering the circumstances, we are satisfied that the learned referee correctly determined this issue. In his opinion he said : " The referee does not entertain the slightest doubt that the exhibit offered on behalf of the defendants, as to which such a warm controversy arose, and such voluminous expert evidence was introduced upon the trial, was not in fact signed by Mr. Shaw. Under these circum-

stances it is not necessary to proceed any further either to charac-
terize the instrument as a forgery, or to attempt to declare who per-
petrated such forgery. It is enough to find, as has been done, that
the receipt was not signed by Mr. Shaw, and was not the act or
deed of the plaintiff." In this we concur.

As before stated, the issue, whether the signature of "James E.
Shaw, Att'y," to defendants' Exhibit No. 2 was genuine or forged,
was sharply contested on the trial, and so was the issue whether the
paragraph immediately preceding the signature was or was not
written by Carolan O'Brien Bryant. The plaintiff undertook the
burden of showing that the paragraph and signature were both writ-
ten by him, and, to support her contention, experts in handwriting
were called and comparisons instituted between signatures of James
E. Shaw, shown to be genuine, and the one in dispute, and compari-
sons were also instituted between a writing of Carolan O'Brien
Bryant, admitted to be genuine, and the disputed satisfaction and
signature thereto. The counsel for the defendants insists that the
referee erred in permitting comparisons of the latter kind and in
allowing one of the experts to testify to similarities between the
challenged paragraph and the document written by Mr. Bryant and
marked Exhibit U.

Chapter 36 of the Laws of 1880 provided:

" Section 1. Comparison of a disputed writing, with any writing
proved to the satisfaction of the court to be genuine, shall be per-
mitted to be made by witnesses in all trials and proceedings, and
such writings and the evidence of witnesses respecting the same may
be submitted to the court and jury as evidence of the genuineness,
or otherwise, of the writing in dispute.

" § 2. This act shall take effect immediately." ·

In *Peck* v. *Callaghan* (95 N. Y. 73) it was held in 1884 that the
statute did not authorize a comparison of an alleged forged signa-
ture with the writing of the alleged forger, which was followed in
*Bruyn* v. *Russell* (52 Hun, 17). For the purpose of obviating the
effect of the first decision and enlarging the scope of the statute,
chapter 555 of the Laws of 1888 was enacted, which provides:

" Section 1. Section two of chapter thirty-six of the Laws of
eighteen hundred and eighty, entitled ' An act to amend the law of

evidence and practice on civil and criminal trials,' is hereby amended so as to read as follows :

"§ 2. Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person, claimed on the trial to have made or executed the disputed instrument or writing, shall be permitted and submitted to the court and jury in like manner. But nothing within contained shall affect or apply to any action or proceeding heretofore commenced or now pending.

"§ 2. This act shall take effect immediately."

It is asserted that the act of 1880 was superseded by the act of 1888, and that the saving clause of the latter act takes the case at bar, which was begun June 29, 1885, out of that act, and that the rules existing prior to 1880 in respect to the comparison of handwriting are applicable to this case. In determining whether the latter act supersedes the former one, it should be observed that section 2 of the act of 1880 simply provides "This act shall take effect immediately;" and it is this section instead of section 1 which is amended by the act of 1888. (See, also, *Mortimer* v. *Chambers*, 27 Abb. N. C. 289.) But, admitting that the rules of evidence existing prior to 1880 are applicable to this action, the defendants' contention cannot be sustained. Before the passage of the first statute it was the rule in this State that comparisons might be instituted between the disputed signature and other writings shown to be genuine and admitted as evidence in the case, upon the issues involved, and not solely for the purpose of comparison. Exhibit U, which the defendants admitted was written by Mr. Bryant, is not contained in the record. It is referred to at several places, but no statement of its contents is given. At page 690 it is referred to as follows : "Exhibit U. T. P. W., Referee. (The original exhibit shall be referred to and handed up on argument.)" It was not handed to the court on argument. The counsel for the defendants insists that "Exhibit U" was admitted in evidence as a specimen of Carolan O'Brien Bryant's handwriting for the sole purpose of comparison, and refers to folios 1043 and 1045 to sustain the contention. Carolan O'Brien Bryant was under cross-examination, and the following occurred : "Mr. Shoudy : I want to offer the paper marked Exhibit

' U ' for identification.    I only offer so much as is in his handwriting.
By Mr. Norris :    Q.  Are these pencil marks in your handwriting ?
Mr. Shoudy :  I do not offer the pencil marks.    A.  That is my
handwriting — I mean the pencil.    Q.  How is there, at the termina-
tion of the paper, ' June, 1884 ; ' in whose handwriting is that ?
Turn over to the last page of the paper.    A.  There is a memo-
randum here of ' June, 1884.'    Q.  Do you know whose handwriting
it is ?   A.  It is like Mr. Shaw's.    Q.  It is certainly not yours ?    A.
No, sir, it is not mine.    Q.  Are there any other marks on that paper
not in your handwriting than you have already mentioned ?    A.
No, sir.    Q.  Look it over ?    A.  Here are marks on here and pencil
interlineations that I had nothing to do with.    The Referee :  In
so far as the paper exhibits the handwriting of the witness, it is
received in evidence and marked Exhibit ' U '."

Turning again to the part of the record where about 200 exhibits
are printed we find that it is stated that Exhibit Z and Exhibits Z,
1, 2 and 3 were introduced " for comparison of handwriting," and
are not printed.    Again it is stated that Exhibits 23 and 26 were
introduced by defendants " to show handwriting " and that defend-
ants' Exhibits Nos. 1 to 93 were introduced " to show signatures
only ; " but we find no such statement in respect to Exhibit U.
This case was made up by the appellants, and the burden of show-
ing error is upon them, and we cannot presume from this record,
and in the absence of the exhibit, that it was introduced in evidence
solely for the purpose of comparing Carolan O'Brien Bryant's hand-
writing with the last paragraph and signature of Exhibit No. 2.

In *Miles* v. *Loomis* (75 N. Y. 288), which arose before the stat-
ute of 1880, it was held that " Where the instruments, the signa-
tures to which are thus compared, were for aught that appears in the
case, offered in evidence for other purposes than comparison, and
were received without objection, it cannot be objected upon appeal
that they were immaterial for any other purpose and so could not
be used for comparison ; having been received without objection
they must be regarded as properly in evidence for all the purposes
of the case."    By referring to what occurred when Exhibit U was
offered in evidence, it will be seen that the defendants' counsel did
not object to its admission.    Under this state of facts and the
authority last referred to, we must assume that Exhibit U was

received in evidence without objection, and not solely for the purpose of instituting a comparison of handwritings.   Exhibit U having been properly received in evidence, it was competent to institute a comparison between it and the disputed release and signature thereto. The plaintiff undertook to establish affirmatively that the release which forms a part of defendants' Exhibit No. 2 was in the handwriting of Carolan O'Brien Bryant.   This was a distinct and relevant issue, which the plaintiff had the right to tender and try, and it was competent to show a similarity between the handwriting of the release and of Exhibit U.   (*Pontius* v. *The People*, 82 N. Y. 339.)

In the case last cited the defendant was convicted on an indictment, charging him with having assaulted with intent to kill John G. Hoster.   Promissory notes purporting to be signed by Hoster were found in defendant's possession which, it was alleged, were forged by him.   These notes and some of defendant's books of account were admitted in evidence without objection, and the jury, over defendant's objection, were permitted to compare defendant's handwriting in his books of account with the notes purporting to be signed by Hoster, which ruling was sustained by the Court of Appeals.   If the ruling contended for by the appellants' counsel in the case at bar were the correct one, as applied to cases not within the statute of 1888, it would have been competent only to have compared the genuine writing of John G. Hoster with the signature purporting to be his.   Before the statute of 1880, documents written by a party to an action and admitted in evidence on the issues, or without objection, might be compared with any signature or writing which, it was alleged, such party wrote.   *Peck* v. *Callaghan* (*supra*) is not an authority to the contrary.   That case arose over the genuineness of the signature of a testator to a will. The contestant offered in evidence the genuine writings of a third person solely for the purpose of instituting a comparison between those writings and the signature alleged to have been the testator's. The admission in evidence of those writings was objected to, and they were excluded, which ruling was sustained, but it was not held that if the writings had been introduced on the issues in the case, or without an objection, the comparison could not have been instituted.

The counsel for the appellants urges that it was error to permit

witnesses to use ninety-two or ninety-three checks, signed by James E. Shaw, as standards of comparison. The genuineness of these checks was established by Mr. Bryant on his cross-examination at pages 289 *et seq.*, and were marked for identification. The appellants' counsel says in his brief that these checks were never offered in evidence in behalf of the plaintiff, but were used as standards for the comparison of handwriting. At page 697 of the case the following appears :

"Defendants' Exhibit No. 26, T. P. W., Referee. Introduced to show handwriting, and shall be produced and referred on argument.

"Exhibits checks Nos. 1–93 inclusive were introduced to show signatures only. They shall be produced on argument and may be referred to."

Thus the case shows that these checks were introduced by the defendants for the very purpose for which they were used. No error prejudicial to the appellants was committed in admitting or rejecting evidence upon the issue whether the contested part of Exhibit No. 2 was in the handwriting of Carolan O'Brien Bryant.

The young ladies were not sworn on the trial, and neither they nor the father contested the correctness of the claim as presented, and the only defense sought to be established on the trial was payment. But it is urged that the referee erred in not ascertaining the amount for which each of the defendants was liable, upon legal principles. It is insisted that the referee should have found how much each defendant was indebted for rooms and how much each defendant was indebted for meals. It is also asserted that the young ladies should each pay one-half of the charges for the governess, and no part should be charged against the father. It appears that, during all of the time the defendants occupied rooms at the hotel, they lived together as a family, occupying, during much of the time, two bedrooms and a parlor, which were used in common by all. The hotel was kept on what is known as the European plan. The defendants usually took their meals together, making a single order for the three, and if guests were there, all were included in the order and the total amount of it was charged to the account. It is quite apparent, we think, that it is impossible to determine just how much, under the circumstances, each of the defendants should be charged for the rent of rooms and how much each should be charged

for meals. There is no way of knowing what portion of the food ordered each of the defendants and the governess devoured, and to require such particularity of proof as a condition of recovery will defeat the entire claim, the justness of which is not disputed, the question of payment being out of the way. The referee found that the value of the rooms occupied during the period mentioned was $5,588.12, and that, considering the circumstances under which they were occupied, each defendant should be charged with one-third thereof. The father of the infants asserts that it was error to charge him with any sum on account of the board and room furnished the governess. This is undoubtedly true, provided he did not assume any liability, nor order the room or meals for her. How many meals she ate and how much each meal was worth cannot now be ascertained, the items eaten by each person not being disclosed by the tickets sent to the cashier's desk. The father did not testify, though examined at great length, whether or not he agreed to pay all or any part of the charges for the meals and room furnished for the governess. The plaintiff seems to have acted as banker and paymaster for these defendants, and when bills for clothing, education, carriages, and such bills as are usually incurred by such families, were brought to the hotel, they were paid by the plaintiff and charged to the account. Many of these bills disclosed that they were for some one of the defendants, and, in such cases, the referee has charged those bills to the separate account of each. A judgment was ordered and entered against Amanda I. Bryant for $5,345.99; against Agnes C. Bryant for $5,534.10, and against Carolan O'Brien Bryant for $11,291.42, by which no injustice was done, so far as we can learn from the record, except in a few instances where, by oversight, a few items were charged to one defendant that should have been charged to another, as is conceded and pointed out by the learned counsel for the plaintiff in his brief. Neither of these items nor the apportionment is challenged on this appeal by the defendants. During the period that the defendants were at the plaintiff's hotel the father represented that he was the general guardian of the infants, having the care of their persons and estates. He described himself as such in several documents, but, in truth, he never was their general guardian. This case has been twice tried at great length before different referees, and every opportunity has

been given the defendants to challenge the items of the account and to show how the whole sum, admitted to be just, should be apportioned among them, but neither defendant has offered any testimony upon this issue, and we are of the opinion that the principle upon which the referee rendered his judgment cannot now be successfully gainsaid. It has been held, and, we think rightly, that when two or more infants are members of the same family, the person who supports them is not bound to show precisely, as a condition of recovery against the estate, how much should be charged against each infant for the ordinary expenses of food, clothing, etc. (*Shepard* v. *Stebbins*, 48 Hun, 247; *Hyland* v. *Baxter*, 42 id. 9; *Rolph's Estate*, 9 N. Y. Supp. 293.) This rule, as applied to this case, is not in conflict with the judgment of this court when this case was first before it. (65 Hun, 57.) The referee on the first trial divided the claim into three parts, and entered judgment against each of the defendants for one-third. It was said in the opinion that the referee made an arbitrary decision. Such was not the determination of the referee on the present trial. The amount for which each defendant was held liable was founded on evidence which, we think, supports the decision.

The learned counsel for the respondent makes the following concessions in his points: There are some of the items which will plainly need correction by this court.

The following items should be deducted from the joint account of Agnes and Amanda Bryant and added to the charge against Carolan O'B. Bryant, there being no proof that the expense was incurred for the use or benefit of the children:

Dec. 12, 1883. Voucher K74a, page 628................. $200
Jan.  8, 1884. Charge for " appraisement," no voucher..    20
Jan.  9, 1884. Voucher K81, page 632...............    487
Feb.  2, 1884. Voucher K90, page 639...............     25
Feb. 29, 1884. Voucher K104, page 647.....  .........     50
June 11, 1884. Voucher K150, page 669......  ........     28
July 31, 1884. Voucher K163, page 675..............    150
Nov. 10, 1884. Voucher K169, page 679..............     25

The following items should be deducted from the family account and charged to Carolan O'B. Bryant alone, to wit:

July 26, 1883.  Voucher K10, page 595, should be deducted from the hotel bill, the item for "wine and bar". .......................  $9 00

July 30, 1883.  Voucher K11, page 596, "Barnum's Hotel," there being no proof that it was for the family.............................  150 00

June 3, 1883.  Voucher K12, page 597, should be deducted for wines, etc......................  2 20

Aug. 4, 1883.  Voucher K14, page 598, should be deducted, wines, $17.40; cash, $25, making....  42 40

May 14, 1884.  Voucher K139, page 665, there being no proof that the books were for the family.  250 00

The following item should be deducted from the charge against Amanda Bryant and added to the charge against Agnes, it being clearly a clerical mistake:

Feb. 20, 1884.   Voucher K102.   Page 645.............  $112 90

These clerical errors are not pointed out and complained of by the counsel for the appellants.

The judgment entered in this action should be modified in accordance with the concessions above stated, and as modified affirmed, without costs to either party.

O'BRIEN, J.; concurred; VAN BRUNT, P. J., concurred in result.

Judgment modified as directed in opinion and affirmed as modified, without costs to either party.