MACOMBER and LEWIS, JJ., concurred.

Order appealed from affirmed, with costs of this appeal to the respondent to be paid by the appellant personally.

---

GEORGE E. MATTHEWS AND CHARLES E. AUSTIN, RESPONDENTS, v. THE ASSOCIATED PRESS OF THE STATE OF NEW YORK AND OTHERS, APPELLANTS.

GEORGE BLEISTEIN, AS PRESIDENT OF THE COURIER COMPANY, RESPONDENT, v. THE SAME, APPELLANTS.

*Associated Press — its charter and by-laws constitute a valid contract — a by-law forbidding its members to receive news from a rival association — not in restraint of trade — not detrimental to the public interest, nor to liberty of speech and of the press.*

The Associated Press of the State of New York was organized under chapter 754, Laws of 1867, for the mutual protection of its members and for the purpose of procuring and supplying them with telegraphic news.

One of its by-laws forbade, under penalty of suspension, a member to receive or publish the regular news dispatches of any other news association covering a like territory and organized for a like purpose. Certain members of the Associated Press violated this by-law, and were notified that a charge to that effect had been made against them by said association.

In an action brought by such members to restrain proceedings, for the enforcement of said by-law, initiated against them,

*Held*, that the charter and by-laws constituted the contract between the members, and between them and the association.

That such a contract to collect news through agents, for the exclusive benefit of the associates, and for their common benefit, was supported by a sufficient consideration.

That the contract embodied in the by-law, by which the associates bound themselves not to publish news furnished by a rival association, did not exceed the bounds of proper self protection, and was not in restraint of trade.

That it was not necessarily detrimental to the public interests, nor did it offend against the constitutional provisions securing liberty of speech and of the press.

APPEALS in each of the above-entitled actions by the defendants, the Associated Press of the State of New York and E. Prentiss Bailey and others, composing the executive committee of the Associated Press of the State of New York, from orders entered in said actions in the clerk's office of Erie county on the 4th day of March, 1891, continuing a preliminary injunction theretofore granted in each of said actions.

*S. E. Payne*, for the appellants.

*C. B. Wheeler*, for the respondents in the first above-entitled action.

*A. Wilcox*, for the respondent in the second above-entitled action.

DWIGHT, P. J. :

The plaintiffs in No. 1 are the publishers and proprietors of the "Buffalo Express," a daily newspaper published in the city of Buffalo. The plaintiff in No. 2 is president of the Courier Company, a joint-stock association which is the publisher and proprietor of the "Buffalo Courier," also a daily newspaper published in the same city. The plaintiffs in both cases are members of the defendant, the Associated Press of the State of New York, a corporation organized under a special act of the legislature of this State, being chapter 754 of the Laws of 1867, among the objects of which, as declared by the act, are "the mutual protection of members of the press, and "procuring and supplying its members with telegraphic news." The other defendants are the persons composing the executive committee of the defendant association.

The action in each case is to restrain the defendants from proceeding to enforce against the plaintiffs one of the by-laws of the defendant association, which is in the following terms :

" 25. No member of this association shall receive or publish the regular news dispatches of any other news association, covering a like territory, and organized for a like purpose with this association. Any member violating this by-law shall be suspended by the executive committee from all the rights and privileges of the association, as provided in section 24, subject, however, to reinstatement by a two-thirds vote of the association, upon written agreement to conform to all the by-laws and contracts of the association."

By-law 24, referred to in the above, prescribes the mode of its enforcement, viz., by suspension by the executive committee " after an examination of the offense charged," on notice to the offending member ; the decision of the committee being, however, subject to the approval or disapproval of the association at its next meeting.

On the 23d of April, 1890, the plaintiffs in each case were served by the defendants with a notice, of which the following is a copy :

" You will please take notice that you are hereby charged by the Associated Press of the State of New York with the violation of the by-laws of said association, and particularly of section 25 thereof, in both receiving and publishing the regular news dispatches of the United Press Association, which is another news association covering a like territory, and organized for a like purpose with this association. It is charged by this association that you are violating, and have, since the first day of January, 1890, violated said by-laws in the manner aforesaid."

And thereupon these actions were commenced to restrain the proceedings thus initiated and foreshadowed, on the part of the defendant, and a preliminary injunction was obtained in each case, which was continued by the order from which this appeal is taken.

The two cases, as presented by the moving and opposing papers, are in all respects the same, except that the plaintiff in No. 2, representing the Buffalo Courier, voted in favor of the by-laws 24 and 25, the enforcement of which is sought to be restrained ; but it is not seriously contended by either party that the presence of this circumstance in the one case, or its absence in the other, creates any real distinction between the cases. The plaintiffs in the two cases are equally members of the defendant association, and are equally amenable to its by-laws, whether adopted with or without their

individual concurrence. We shall, therefore, in our discussion of the two cases, treat them as if they were one.

There is no controversy about the facts of this case. The plaintiffs had, as charged, both received and published the regular news dispatches of the United Press Association, and had thus become liable to suspension from the rights and privileges of members of the defendant association, unless it appears either that the act complained of was not within the terms of the by-law which prescribes that penalty, or that the by-law itself was inoperative because contrary to law.

That the act was within the prohibition of the by-law we think sufficiently appears. The United Press Association covers the same territory as that covered by the defendant, viz., the State of New York; and the fact that it also covers other territory does not, we think, take it out of the purview and intention of the by-law in question. It is, as to the State of New York, and in respect to news collected within this State, a competitor of the defendant, and is thus within the plain intent and purpose of the by-law, which was to prevent the encouragement of such competition by members of the defendant. The question whether such purpose is an unlawful one and one against which a court of equity will interfere, is a somewhat more serious question, and, as we think, the only substantial question in this case.

The business of collecting the news of the day and furnishing reports of it to the press for a compensation has become a very well known and important industry. It can scarcely be called a branch of trade. There is no right of property in the news itself. That is neither bought or sold. Any man who hears it may make such use of it as he can for his own advantage, or may communicate it to others. So he may make a business of collecting news and furnishing reports of it to the newspapers, or to such of them as will compensate him for his trouble. The work is commonly done in the locality of each newspaper by its own reporters employed and paid for that purpose. In remote localities the same system might be, and no doubt was formerly much employed, viz., of a special reporter or correspondent engaged to supply to the particular newspaper, reports by post or by telegraph, of occurrences in his locality. But of late publishers have availed themselves of the obvious advantages

of combination for the procurement of news, and so have organized themselves by voluntary association or by incorporation, and by this means have shared at once the news collected and the expense of its collection. But whichever the system made use of, whether of separate reporters and correspondents or of reporters and correspondents employed by syndicate or corporation, it is plain that the employment is that of agents, to do the work of collecting news in their several localities for one or more newspapers. In this case the agents are employed by the defendant, " the Associated Press of the State of New York," acting for all the publishers who are comprised in its membership. As to all these, the charter and by-laws of the corporation constitute the contract between themselves and between them and the association. Among the provisions of that contract is one to the effect that none of the members shall contract with any other news association to employ for them agents for the procurement of news within the same territory as that in which agents of the defendant association are employed. This contract between the members of the association is mutual and is for the common benefit, and so is supported by a sufficient consideration. It is for the common benefit because the efficiency of the association depends upon the number and activity of its agents, and these, largely, upon the extent of its revenues from which salaries are paid, and that, in turn, upon the number of its patrons, so that the building up of competitors which must draw off from its patronage, will necessarily detract from the extent and value of its work.

The contract, therefore, of the associates with each other, and of these with the association, which is embodied in the by-law in question, seems to us not to exceed the proper bounds of self protection, and not to be unreasonable, nor obnoxious to any principle which has been invoked for its condemnation. Even if the news of the day is to be regarded as a commodity which the plaintiffs are engaged in selling, and which they purchase of the defendant association, the contract is no more in restraint of trade than the thousand contracts by which dealers in certain classes of goods agree to sell no other than the products of certain mills or manufactories, in consideration of the reciprocal agreement of the manufacturer not to furnish his goods to other dealers of the same vicinity. That such contracts in restraint of trade are not invalid if they impose no

restriction upon one party which is not beneficial to the other, and are induced by considerations which make it reasonable for the parties to enter into it, is well established by repeated adjudications of our own court of last resort. (*Hodge* v. *Sloan*, 107 N. Y., 244; *The Diamond Match Co.* v. *Roeber*, 106 id., 473; *Leslie* v. *Lorillard*, 110 id., 519.) Nor is the contract necessarily detrimental to the public interest, in the respect that whatever tends to increase the efficiency of the defendant association as a collector of news is, so far, in the interest of the public as readers of the newspapers.

The objection that the contract is in violation of that provision of the Constitution of the State which is intended to secure liberty of speech and of the press, seems rather fanciful than real. The first clause of that valued provision declares that " every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right," and the second forbids the passage of laws " to restrain or abridge the liberty of speech or of the press." There is nothing in these provisions which forbids the publisher of a newspaper to contract in respect to the source from which he shall obtain his news for publication.

There are no facts in the case which seem to us to present the question of the violation of vested rights in third persons. Whenever a subscriber to either of the journals published by the plaintiffs, or any person advertising therein, shall present to the court a case of the violation by the plaintiffs of a contract with him to enhance the value of such paper, either as a repository of news or as an advertising medium, by publishing the matter furnished by the United Press Association, it will become the duty of the court to inquire as to the measure of damages, or other relief to be awarded to the plaintiff in such an action.

In this case it is conceded that the plaintiffs have intentionally violated a by-law of the defendant association of which they are members, and we are of opinion that no case has been made by them calling for the interference of a court of equity to prevent the enforcement of that by-law in the manner prescribed.

The order continuing the injunction should be reversed and the motion denied, with costs.

MACOMBER and LEWIS, JJ., concurred.

Order appealed from in each case reversed, with ten dollars costs and disbursements of the appeal, and the motion in each case denied, with ten dollars costs.