(9 App. Div. 425.)

COHEN v. BERLIN & JONES ENVELOPE CO.

(Supreme Court, Appellate Division, First Department. October 23, 1896.)

CONTRACTS—VALIDITY—REGULATING PRICES.

  A provision of a contract for the purchase by defendants, at a certain price during a specified period, of a certain quantity of goods manufactured by plaintiff, and that plaintiff should not sell to others for any less price, does not show an intent to restrict the manufacture and sale of such goods.

Appeal from special term, New York county.

Action by Charles J. Cohen against the Berlin & Jones Envelope Company to recover damages for breach of contract. From an interlocutory judgment overruling a demurrer to the complaint on the

ground that facts were not stated therein sufficient to constitute a cause of action, defendant appeals.  Affirmed.

The contract between the parties was as follows:

This agreement made this eighth day of August, 1887, by and between Charles J. Cohen, manufacturer of the city of Philadelphia, of the first part, and the Morgan Env. Co. of Springfield, Mass., the White Corbin & Company of Rockville, Conn., the Holyoke Env. Co. of Holyoke, Mass., the Whitcomb Env. Co. of Worcester, Mass., the Plimpton Manufacturing Company of Hartford, Conn., Powers Paper Company of Springfield, Mass., Samuel Raynor & Co., of New York City, J. Q. Preble & Co.. of New York City, the Berlin and Jones Env. Co. of New York City, parties of the second part, witnesseth:

Whereas, the Standard Envelope Company, which is under control of the parties of the second part, will issue from time to time a schedule or schedules containing a list of prices of envelopes sold in the market as staple goods, for printing and tinting the same, etc., as hereinafter more particularly set forth;  now, therefore, the parties hereto mutually covenant and agree with each other, their and each of their executors, administrators, successors, and assigns, as follows, to wit:

(1) The said party of the first part agrees to sell to the said parties of the second part, and the said parties of the second part agree to buy and pay for, so much of the production of envelopes of the said party of the first part as shall not exceed in the whole two hundred and fifty thousand envelopes daily, for the period of five years from the date hereof, counting three hundred days to the year; the prices and terms for such envelopes to be in conformity to the schedules from time to time in force, issued by the Standard Envelope Company.  Should the parties of the second part fail to take the said envelopes, or any part thereof, then they shall pay to the said party of the first part damages for such nontaking, which damages are hereby mutually liquidated and agreed upon to be (10) ten cents per thousand.  The party of the first part, however, agrees that he will use his best endeavors to sell to the trade in the usual course of business any of the said envelopes not taken by the parties of the second part at the prices hereinbefore provided for, and as to such goods so sold the liquidated damages of (10) ten cents shall not be paid, the intent of this contract being that if the party of the first part shall sell to the trade two hundred and fifty thousand envelopes daily, then he shall not be entitled to any damages in respect of such day's production.

(2) The said party of the first part agrees to pay to the said parties of the second part the sum of (10) ten cents per thousand for each thousand of envelopes sold per day to the trade beyond the two hundred and fifty thousand above provided for.

(3) The intent of this contract is to cover total annual sales of seventy-five millions of envelopes, and the word "daily" is not intended to refer to the production of any particular day, but to the average production.  Settlements between the parties are to be made on the first of each month, or twenty days thereafter.

(4) The parties of the second part hereby constitute and appoint the Standard Envelope Company of Springfield, Mass., as their attorney and agent for notices, settlements, and dealings provided for in this contract with the party of the first part.

(5) Tender of the goods by the party of the first part is hereby waived by the parties of the second part, unless an express demand for the delivery of the same be made by the parties of the second part in writing.  Deliveries of goods by the party of the first part shall be f. o. b. in Philadelphia.

(7) The party of the first part shall not be required to furnish goods in any event for less than their cost of manufacturing.

(8) The parties of the second part agree to sell to the party of the first part all envelopes they may order at schedule prices, on the same terms as other buyers not parties hereto.  Envelopes bought by the said party of the first part from any person whomsoever, and by them sold, not to be computed in the two hundred and fifty thousand above mentioned.

(9) The said party of the first part agrees that he will not during the term of this contract directly or indirectly sell to any one or manufacture for any

one furnishing his own paper therefor, envelopes below the schedule prices which may be issued from time to time by the Standard Envelope Company as hereinbefore provided for regular goods; that he will not vary in any way from the provisions of such schedule; that he will not make any rebate or gift to any purchaser or any party furnishing his own paper to be manufactured; and that he will not do or omit anything the doing or omission of which will in any manner enable any one to buy envelopes or get envelopes manufactured below said schedule prices; that he will employ salesmen on salary only, and bill all envelopes direct to the purchaser; that he will not allow his salesmen to offer any pecuniary inducement to any purchaser of envelopes, nor place any envelopes for sale on consignment, nor employ as salesman any person having a store for the sale of paper or envelopes or stationery goods or notions, or be carrying any line of envelopes in stock, or any person connected with such store or employed therein or thereby. In case of any intentional violation of this ninth clause by the party of the first part or his salesmen, the party of the first part will pay to the parties of the second part as agreed and liquidated damages twenty-five cents per thousand for each thousand sold in such violation, and also a sum equal to the value of the goods sold in such violation.

(10) The party of the first part agrees that during the term hereof he will not sell, pledge, transfer, lease, or give possession of his manufacturing plant or envelope machinery, or any part thereof, to any other party than to a party to this agreement, except upon condition that such party shall thereupon immediately become substituted for the party of the first part in this agreement; and should any such sale, pledge, transfer, lease, or possession be made or given, the party of the first part agrees that he will not thereafter during the period of this contract engage in the manufacture or sale of envelopes, except west of the one hundredth degree of longitude and south of the thirtieth parallel of latitude. The penalty for any violation of this tenth clause shall be fifty thousand dollars agreed and liquidated damages.

(11) The party of the first part agrees that he will not in any way, directly or indirectly, interest himself, by the advancement of capital or otherwise, with any person, firm, or corporation engaged or intending to engage in the manufacture or sale of envelopes or envelope machinery, other than with the parties hereto; but nothing herein shall be construed as restricting the rights of the party of the first part to deal in envelopes or envelope machinery in any foreign country. The penalty for violation of this eleventh clause shall be fifty thousand dollars agreed and liquidated damages.

(12) All orders for envelopes on the books of the party of the first part, and all contracts made by him for the sale or manufacture of envelopes, or for which he may be held, previous to the signing of this document, shall be exempt from the provisions of this contract. Such orders and contract on regular goods are not to exceed one million envelopes; and a list of the same to be sent to the parties of the second part.

(13) None of the provisions hereof shall apply to contracts with the government of the United States or any department thereof, or any telegraph company, or to the street-car change envelopes, manilla, printed or plain (No. 1 drug size), or to papeteries, nor for sales for exportation, where the goods sold are actually exported.

(14) In case of any alleged violation of this contract by any of the parties hereto, or of any disagreement herein, the same shall be referred for settlement to three disinterested referees, one to be chosen by the party of the first part, another by the parties of the second part, and the third by these two, the decision of whom, or a majority of whom, made in writing, shall be final and binding on both parties. In any such controversy any party hereto may be required to produce all his books and papers. All rights of any party hereto, both in law and in equity, are hereby reserved.

(15) If any of the parties of the second part commit any of the acts forbidden to the party of the first part by this contract, then the party of the first part shall be entitled as against the party so violating to the same rights and remedies as are herein secured to the parties of the second part.

(16) In the event of the destruction by casualty of the plant of the party of the first part, in whole or in part, so that he would be prevented from manu-

facturing, the rights and duties of both parties shall be suspended, so far as deliveries and payments are concerned, until the plant shall be restored, and the time occupied in such restoration shall be considered as if the party of the first part had daily produced and been paid for two hundred and fifty thousand envelopes.

Witness the hands and seals of the parties the day and year first above written.

> Charles J. Cohen.
> J. Q. Preble & Co.
> The White Corbin & Co.,
>> By Wm. H. Prescott, Tr.
> Saml. Raynor & Co.
> Morgan Envelope Co.,
>> By R. W. Day, Treas.
> Powers Paper Co.,
>> By L. J. Powers, Presdt.
> The Whitcomb Envelope Co.,
>> By M. F. Dickinson, Jr.,
>> Director and Attorney.
> Holyoke Envelope Company,
>> By Geo. N. Tyner, Treas.
> The Plimpton Mfg. Co.,
>> By L. M. Plimpton, Presdt.
> The Berlin & Jones Envelope Company,
>> Per H. C. Berlin, Treas.

Witness as to Charles J. Cohen:
  Wm. Barnard.
  Fred. N. Kraft.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Robert Thorne, for appellant.
Louis Marshall, for respondent.

WILLIAMS, J. A contract will not be adjudged to have been illegal when it is capable of a construction which will render it valid. The law will not presume that a contract was made with intent to violate the law, nor is it enough to vitiate a contract that a suspicion or probability of an unlawful intent arises from the contract itself. Lorillard v. Clyde, 86 N. Y. 384. It seems to us that it cannot be said, from an examination of this contract, in the absence of evidence with reference to the circumstances surrounding its execution, the character and business of the parties, and the manner in which the parties conducted the business under the contract, that the intent of the parties was to violate the law in any of the respects claimed by the defendants. It cannot be said that the design was to restrict the manufacture and sale of envelopes, because the plaintiff was in no way restricted in the quantity he should manufacture or sell. It cannot be said that the defendants were in any way restricted in the manufacture or sale of envelopes. Indeed, it does not appear that they were engaged in the manufacture of envelopes at all, or to what extent, before or after the contract was made. It cannot be said that there was any illegal combination to fix or maintain the prices of envelopes. All agreements to fix and maintain the prices of commodities are not illegal. It does not appear that the prices of any envelopes except those manufactured by the plaintiff were to be fixed or maintained under the contract. It

was provided that the defendants would purchase a certain quantity of the envelopes manufactured by plaintiff, at certain prices to be fixed by the Standard Envelope Co., which company was under the control of the defendants, and that the plaintiff should not sell to other parties for any less price; but this, alone, was not illegal. Holtz v. Schmidt, 59 N. Y. 253. It is claimed that the fifteenth clause in the contract restrained the defendants from a sale of the envelopes manufactured by them at any lower price, but, as before stated, it does not appear that the defendants manufactured any envelopes, or to what extent they so manufactured them. This clause, moreover, is vague and uncertain, and there is doubt as to the intention of the parties in the language used. Evidence is needed outside the contract to explain its meaning and show what the parties intended by it. We cannot say, from the language of the contract itself, that it contains any unlawful agreement between the parties to fix or maintain the prices at which envelopes should be bought or sold. For some years after the contract was made the parties carried on business under and pursuant to its terms. It does not appear what the character of the business so carried on was, or whether such business indicated an unlawful intent or not. When all the facts shall have been brought out upon the trial of the case, the court will be able to determine, in view of the acts of the parties in making the contract and carrying it out, as to its legality. We do not feel at liberty, from a mere examination of the contract itself, and from a consideration of such facts as are alleged in the complaint which are deemed established, for the purpose of this demurrer, to construe the contract so as to hold it illegal, for any of the reasons claimed on the part of the defendants.

Our conclusion is that the judgment should be affirmed, with costs, with leave to the defendants to answer upon the usual terms. All concur.