COHEN v. BERLIN & JONES ENVELOPE CO. et al.

(Supreme Court, Appellate Division, Second Department. March 7, 1899.)

1. CONTRACTS—RESTRAINT OF TRADE—PREVENTION OF COMPETITION.

Manufacturers of envelopes made an agreement with another envelope manufacturer by which they agreed to purchase from him, at prices to be fixed from time to time by the former, a stated quantity of goods manufactured by him during a stated period, and he agreed that during such time he would not sell to others at a less price. At the time of making the contract the business of manufacturing envelopes was demoralized through excessive competition, and goods were being sold at less than cost. Nineteen other concerns throughout the country engaged in manufacturing envelopes were not parties to the agreement, and their goods were in competition with those of the contracting parties. The amount of envelopes to be furnished under the contract was the full capacity of the manufacturer's plant, and he had never been able to sell that quantity before. It did not appear that the purchasing manufacturers were in a position to fix prices that would produce more than a reasonable profit. *Held*, that the contract was not void as in restraint of trade, or as preventing competition.

2. SAME—ESTOPPEL—PARTIES IN PARI DELICTO.

Where manufacturers required another manufacturer to enter into an agreement with them for enhancing the price of their joint products, through fear of subjecting the latter to a ruinous competition, they cannot say, as against him, that the agreement is against public policy, since he was not in pari delicto.

Appeal from trial term, New York county.

Action by Charles J. Cohen against the Berlin & Jones Envelope Company, impleaded with others, for damages for breach of a contract. From a judgment for plaintiff, and from an order denying a new trial, the company appeals. Transferred from First to Second department. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Robert Thorne (Robert W. De Forest, on the brief), for appellant.
Samuel Untermyer (Louis Marshall, on the brief), for respondent.

HATCH, J. The contract which is the subject of this action was reviewed by the appellate division in the First department upon a demurrer interposed to the plaintiff's complaint; and the court held, in affirmance of the court at special term, that it did not appear upon the face of the contract that it was illegal as being in

restraint of trade, or for any other reason. Cohen v. Envelope Co., 9 App. Div. 425, 41 N. Y. Supp. 345. We think that the determination of the court upon such review was correct, and have no hesitation in adopting the doctrine therein announced. Upon this appeal it is insisted that, even though the former decision be correct, yet the evidence given on the trial establishes that the contract is not enforceable, as it was entered into for the purpose of stifling competition, enhance prices, and restrain production. In support of this contention the defendants mainly rely upon three cases decided by the court of appeals: People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062; Judd v. Harrington, 139 N. Y. 105, 34 N. E. 790; and People v. Sheldon, 139 N. Y. 251, 34 N. E. 785. The first two of these cases determined that the contracts there under consideration were void, as matter of law, for the reason that they were inimical to trade and commerce, and therefore infringed upon the public policy of the state. In both the facts were conceded, and in both the court disposed of the question as one of law. The third case was prosecuted by an indictment for conspiracy, and the court held that the contract was inimical to trade and commerce, and upon proof of overt acts under it the defendants were properly convicted. The rule of law established by these cases is the same, and may be stated to be that where the agreement deals with an article of prime necessity to the people, seeking through its terms to prevent competition in trade therein and control the market price of the article, it invades the sanctity of a sound public policy, and is therefore void. The test of such an agreement is not what has been, but what may be, done thereunder; and, if it may operate to the hurt of trade and to the prejudice and injury of the public, it falls under condemnation. These cases, however, do not hold that all contracts in restraint of trade are void, nor is such rule the law. Agreements which have for their purpose the realization of a fair price for the product manufactured and sold do not contravene any rule of public policy, even though in some respects they operate in restraint of trade. In the Sheldon Case, 139 N. Y. 263, 34 N. E. 789, it was said by Judge Andrews:

"The obtaining by dealers of a fair and reasonable price for what they sell does not seem to contravene public policy, or to work an injury to individuals. On the contrary, the general interests are promoted by activity in trade, which cannot permanently exist without reasonable encouragement to those engaged in it. Producers, consumers, and laborers are alike benefited by healthful conditions of business."

The distinction between the two classes of contracts is admirably stated by Judge Gray in Leslie v. Lorillard, 110 N. Y. 519, 533, 18 N. E. 366, where the learned judge says:

"When, therefore, the provisions of agreements in restraint of competition tend beyond measures for self-protection, and threaten the public good in a distinctly appreciable manner, they should not be sustained. The apprehension of danger to the public interests, however, should rest on evident grounds, and courts should refrain from the exercise of their equitable powers in interfering with and restraining the conduct of the affairs of individuals or of corporations, unless their conduct, in some tangible form, threatens the welfare of the public."

This doctrine is abundantly supported in Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419; Vinegar Co. v. Foehrenbach, 148 N. Y. 58, 42 N. E. 403; Drake v. Siebold, 81 Hun, 178, 30 N. Y. Supp. 697; and Matthews v. Associated Press, 61 Hun, 199, 15 N. Y. Supp. 887. There is nothing in the Penal Code or in the statutes of the state to which our attention has been invited which adds anything to the strength of the doctrine announced in the cases first cited, or which subtracts anything from the force of the litigation placed thereon by the cases last cited. The line of demarkation between the cases is reasonably plain, and it only remains to see into which class this case falls.

We have already seen that the contract, upon its face, does not merit condemnation. Has the testimony in the case aided to that end? It appeared upon the trial (at least, for all purposes essential to support the verdict of the jury) that the business in which the plaintiff was engaged had fallen to a low ebb. To use the language of one of the witnesses for the defendants:

"The competition in the wholesale trade was very close and severe. Goods were being sold in New York by Eastern manufacturers less than could be produced by New York manufacturers. Goods were sold in Philadelphia and in other places less than they could be produced and make a profit by the local manufacturers."

And he further stated that the trade was in such a demoralized condition that it was a question of bankruptcy or combination with many of them; that goods were selling below what it cost to produce them, and that the formation of the Standard Envelope Company was necessary as a measure of protection against ruinous competition; that the purpose of the agreement was to give the people engaged in the business a living profit, and was not to strangle competition, or enhance prices beyond a point where a fair manufacturer's profit could be obtained; that at this time there were plenty of people engaged in this business who were not related to the Standard Envelope Company, either by contract or otherwise, but were in competition with it, and could keep the price within the range of fair dealing. In this connection it appeared that there were 19 other concerns doing business in various parts of the country that were more or less in competition with the parties to this contract. It is true that some of the witnesses for the defendants stated that the contracting parties did not regard these people as competitors, but it is equally true that the character of the business carried on by them showed that they were all more or less competitors, and some of them were shown to be substantial. There was substantive testimony, therefore, to show that the purpose of the contract was not to stifle competition or to unduly increase prices, and the conditions were such that the operation of the contract could not produce, in an appreciable degree, injury to the public. At least, the jury were authorized so to find.

It is insisted that the clause of the contract whereby the plaintiff was to furnish 250,000 envelopes daily was not a sale, and was not intended to be, and, as the proof shows that no envelopes were delivered under it, it is conclusive of such fact. It is apparent that the

number contracted to be sold was the full capacity of the manufactory. The plaintiff had never been able to sell this number of envelopes; so the contract did not operate in restraint of production. The plaintiff bound himself absolutely to deliver upon demand these envelopes in this volume, and it cannot be said that because they were not demanded the obligation of the contract was less, or, because they were not so demanded, that the public could suffer thereby. The plaintiff was not bound to manufacture under the contract to the whole extent of his capacity, unless required; and it does not appear that the trade, either before or subsequent to the execution of the contract, demanded this quantity of envelopes, either at the scheduled price, or any price at which they had previously sold. If the arrangement were carried out, it might well have been expected that the whole number would have been required; and, if this condition existed, then the plaintiff was bound to furnish, and not only to furnish, but to pay at the rate of 10 cents a thousand if he increased the production. Quite likely it is that the plaintiff, if he were able to dispose of this number of envelopes, would be willing to make this payment in return for the volume of business which he was able to do, if he could thereby manufacture and sell more; but nothing done under it, whether the demand was made or not, in any wise injuriously affected the public, or could so affect it, unless thereby the price was enhanced. But, to a limited extent, and for the purpose of obtaining a reasonable profit, this was legitimate. The evidence does not show that the prices were raised beyond this point. Indeed, in some respects the price was reduced below what it was before the contract was made. Although the plaintiff was bound to sell at schedule prices, yet it is not made to appear that any schedule of price could be fixed at which the goods could be disposed of, and produce more than a reasonable profit, under the circumstances surrounding the execution of this contract, or during the time of its operation; and, if this be so, we see no reason why a jury might not find that it was not intended to unduly raise prices. When the plaintiff was first approached upon the subject of a combination, the proposition was to buy his business. It cannot be doubted but that the defendants had the right to buy out all the envelope manufacturing business, and consolidate the same, even though they thereby obtained power to end competition and arbitrarily fix prices. Because some of these results flow from a combination where the parties remain the owners of the business, it does not necessarily follow that the combination is unlawful. It was held in Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461, that it was not unlawful, where competition was threatened, to contract with the competitor to abandon his enterprise and enter into employ with the established business. Upon principle, there can be no distinction between such a contract and a combination of the same persons to run the business upon a standard agreed upon between them; and not only under this authority, but under those already cited, such agreements will be sustained, within the limitations already suggested.

The argument of the learned counsel for the defendants proceeds upon the theory that the contract is void upon its face. We do not

feel called upon to follow him in this discussion, for the reason that the former decision is conclusive upon such question. As to all the other questions, we think the court was authorized to submit, and the jury to find, that the steps taken, or which might have been, under the contract, did not operate in restraint of trade, and were not inimical to public policy. The court submitted the questions properly, upon the law as we conceive it to be. The requests to charge, if adopted by the court, would have required it to direct a verdict in favor of the defendants. No error was, therefore, committed in this respect.

It was stated upon the argument that the plaintiff was required by the defendants to enter into this contract as a measure of protection for his own business against the further ruinous competition which would have been waged against him by the defendants. If this be so, the defendants cannot call upon the courts to strain rules for their protection when they are sought to be held accountable for what they have produced. In such cases it may be that the parties do not stand in pari delicto. The borrower at usury was never regarded as occupying that relation to the lender. And so, where there is oppression upon one side and necessary submission upon the other, such relation does not exist. "When one holds the rod, and the other bows to it," the holder cannot be heard to say that the contract thus forced is illegal. Broom, Leg. Max. (8th Ed.) 724. The record, however, does not clearly establish such relation, and we are therefore not called upon to say what the rule would be in such a case.

If our views be correct, it follows that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.