EXPORT LUMBER COMPANY (Originally Suing as EXPORT LUMBER
COMPANY, LIMITED), Respondent, *v.* THE SOUTH BROOKLYN SAW-
MILL COMPANY and GEORGE C. BERGEN, as Executor, etc., of
ZACHEUS BERGEN, Deceased, Appellants, Impleaded with Other.

*Contract between lumber dealers to account for and divide the profits and losses of*
*the export business which each might do — not void as an attempt to control the*
*market.*

A contract recited that the parties thereto were some of the persons and corpora-
tions engaged in the business of selling lumber for export from the port of New
York to foreign countries; that they had been investing large sums of money
in unnecessary duplication of stock, and that, desiring to otherwise econo-
mize in the expense of conducting that branch of their business, they agreed
to sell their respective stocks of lumber purchased or held by them for the
export trade to one of their number, and to lease to him their respective lumber
yards or portions thereof; that each of the parties to the agreement was to con-
tinue the transaction of his or its export business as before without being
required to disclose the agency of the others in the transaction of the business,
and that each and all of the parties should account and divide the profits and
losses; that the business should be conducted under the direction and super-
vision of an advisory committee, and that none of the parties was to conduct
business in the export trade from New York, except under the provisions of
the agreement.

It did not appear that any of the parties to the agreement were producers of
lumber, or that they controlled the supply of export lumber in that market,
nor did it appear what proportions of the trade they controlled.

*Held*, that the agreement was not void as an attempt to control the market, fix
the price and destroy competition.

APPEAL by the defendants, The South Brooklyn Sawmill Com-
pany and George C. Bergen, as executor, etc., of Zacheus Bergen,
deceased, from an interlocutory judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the county
of New York on the 6th day of April, 1900, upon the decision of
the court, rendered after a trial at the New York Special Term, over-
ruling said defendants' demurrer to the complaint.

*John A. Taylor*, for the appellants.

*Courtland V. Anable*, for the respondent.

Judgment affirmed, with costs, on the opinion of the court below, with leave to defendants to withdraw demurrer and answer on payment of costs in this court and in the court below.

Present — VAN BRUNT, P. J., RUMSEY, PATTERSON, O'BRIEN and McLAUGHLIN, JJ.

The following is the opinion of the court below :

NASH, J. :

Two of the five defendants demur to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The point made by defendants' counsel, as stated in his brief, is as follows : This agreement was evidently " a thinly disguised attempt to create an absolute monopoly in the business of exporting lumber, destroying competition and prejudicing the public interest in the most flagrant way, since it permitted each party to the corrupt agreement to masquerade before the public as .an independent business concern, quoting prices to dealers under the misleading guise of firms competing in the same business, when by secret agreement all the results of the sale were to be turned into the Export Company, the plaintiff, and to be distributed to the different parties to the agreement upon a fixed ratio or percentage. Such an agreement is against public policy and will not be upheld."

An agreement will not be adjudged to be illegal when it is capable of a construction which will uphold and make it valid. (*Lorillard* v. *Clyde*, 86 N. Y. 384; *Cohen* v. *Berlin & Jones Envelope Co.*, 9 App. Div. 425.) The contract between the parties to this action, if carried out and performed in accordance with the purpose and terms stated in it, is, upon its face, innocent enough and perfectly consistent with fair business dealing. Briefly, it is a contract between six parties, two copartnerships and three corporations, and an individual, dealers in lumber in New York and Brooklyn, by means of which they propose to transact the part of their business which consisted of the export trade together, and divide profits and losses in certain agreed proportions. The contract recites that the parties to the agreement are some of the persons and corporations engaged in the business of selling lumber for export from the port of New York to foreign countries, each of the parties being engaged in other lumber business than the export trade; that they had been

investing large sums of money in unnecessary duplications of stocks, and desiring to otherwise economize in the expenses of conducting that part of their business, agreed to sell to one of their number their several and respective stocks of lumber purchased or held by them respectively for the export trade, and lease their respective lumber yards, or portions thereof, to the party purchasing, the plaintiff herein; the plaintiff and each of the defendants to continue the transaction of his or its export business as before, without being required to disclose the agency of either defendant in the transaction of the business, each and all of the parties to account together and divide profits and losses in the business. The business, it was provided, should be done under the direction and supervision of an advisory committee composed of members appointed by the parties. None of the parties was to conduct business in the export trade from the port of New York, except under the provisions of the agreement.

The principle of law which the defendants invoke, and to which it is urged the agreement here is obnoxious, is stated and applied in the case of *Judd* v. *Harrington* (139 N. Y. 105), cited as applicable to the case at bar. The real nature and purpose of the agreement there being to suppress competition in an article of food, and so tending to enhance prices, it was held void as contrary to public policy. In that case certain parties, who were brokers and dealers in sheep and lambs, executed an agreement by its terms organizing an association for the declared purpose " of guarding and protecting their business interests from loss by unreasonable competition," by which they agreed to pool their commissions, except such as should be agreed to be paid to certain butchers' associations, and the association so formed entered into an agreement with the butchers' association, by the terms of which the brokers were only to sell to the butchers and the butchers to buy only of the brokers belonging to their respective associations. In an action brought by plaintiff, as treasurer of the brokers' association, against one of its members to recover damages stipulated therein for the breach of the agreement, held, that the two agreements were to be taken and considered together; that they were intended to control the market, fix the price and destroy competition, and so were invalid and not enforcible; that the public might be prejudiced, and whether they were so in fact was not material. The parties to the two contracts, which it

was considered should be read together as one, were the "New York and New Jersey Sheep Brokers' Association" and the "Sheep and Lamb Butchers' Benefit Association of the City of New York." The agreement which the plaintiff was endeavoring to enforce provides for the admission to the association of new members and the extension of its privileges to all who might join. The contracts between these two organizations, read together and thus considered, were manifestly intended to create a combination between the butchers engaged in buying and the brokers engaged in selling sheep and lambs to control the market, fix the price and destroy competition, and thereby the public, who were interested in the price of meat as an article of food, might have been prejudiced by the agreement.

In *People* v. *Sheldon* (139 N. Y. 251), cited in support of the defendants' contention, there was a combination of dealers in the city of Lockport by an organization agreement to prevent competition as between those who were interested in the sale of coal, entered into by all of the retail coal dealers in the city except one, of which it was said in the opinion, "The organization was a carefully devised scheme to prevent competition in the price of coal, among the retail dealers, and the moral and material power of the combination afforded a reasonable guaranty that others would not engage in the business in Lockport except in conformity with the rules of the exchange."

In the case at bar it does not appear that any of the parties were producers of lumber or that they in any manner controlled the supply of lumber in that market for export or other purposes. They were traders, simply engaged in selling lumber, and by their contract agreed to transact their business in a particular manner, which, in the absence of evidence as to the proportion of the trade which they held or controlled, it cannot be determined would enable them to fix the price of lumber for export or might result injuriously to or in any manner affect the public. Secrecy as to the manner of transacting the business could have no effect on the market price of lumber.

Demurrer overruled, with costs, with leave to the defendants to answer within twenty days on payment of costs.