Max Emil DeJonge, Respondent, *v.* Ernest W. Zentgraf and Others, Appellants.

Second Department, March 1, 1918.

Corporation — suit by stockholder to compel directors to declare dividend — contract of incorporators construed — discretion of directors to determine what portion of profits shall be accumulated and what portion divided as dividends.

Where copartners on forming a corporation to take over the partnership business and assets in return for a transfer of its capital stock agreed in writing that the annual meeting of the corporation should be held not later than May first of each year and that prior to such annual meeting the books of the corporation should be closed as of the previous January first " and the profits divided (in proportion to the respective holding of stock), either in the form of dividends or in such other form as, at the time, may seem advisable," a stockholder is not entitled to maintain a suit in equity to compel the directors who have surplus earnings of the company invested in new properties used in carrying on its business to distribute the same as dividends.

Said contract of the incorporators did not take from the directors their legal right to determine what was the best interests of the company and what part of its profits should be divided and what part should be retained as surplus, there being no limitation on the power of the directors contained in the certificate of incorporation.

The statutory power of directors to manage the affairs of a corporation includes discretion in the matter of declaring dividends.

The word " profits " as used in said agreement of the incorporators does not mean all the profits earned by the corporation and no such interpretation will be given where for eleven years the parties have acquiesced in the discretion of the directors in determining what portion of the earnings should be divided and what portion accumulated.

APPEAL by the defendants, Ernest W. Zentgraf and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 21st day of November, 1917, upon the decision of the court after a trial before the court, a jury having been waived.

The judgment decreed that plaintiff recover of the defendants the sum of $73,954.21.

On the 1st day of April, 1905, Charles F. Zentgraf and Louis Dejonge, Jr., both since deceased, were copartners in a manufacturing business, and had partnership property of the value of $1,200,000. On that day the said partners, together with defendants Alfred Dejonge and Ernest W. Zentgraf, and the plaintiff, Max Emil Dejonge, entered into a contract whereby it was agreed that a corporation under the name of Louis Dejonge & Company, with a capital of $200,000, divided into 2,000 shares of the par value of $100 each, should be organized under the laws of the State of New York; that the parties to the contract should subscribe to the capital stock in agreed allotments; that the assets of the copartnership should be transferred to the corporation; and in consideration therefor the company should issue to the signers its full-paid capital stock to the extent of $200,000, and promissory notes aggregating in amount $1,000,000. Of these notes, some of them, to the amount of $200,000, should bear interest at five per cent per annum, and the remaining, in amount $800,000, should bear no interest; that the parties to the contract should be elected to offices in the company, to which specified salaries should be attached; but that, on any of them ceasing to be an officer his salary should cease, and his non-interest-bearing notes should thereafter bear interest at the rate of five per cent per annum and be payable in installments running over five or ten years; that none of the parties should pledge any of his shares of stock, nor sell without first giving to the other parties an option for a year within which to buy it at its book value, and that like provisions should govern the sale of the stock of any of the parties who should die. The contract contained the following clause, out of which this litigation has arisen:

"The annual meeting of the corporation shall be fixed by the By-Laws not later than May 1st of each year, and shall so remain, unless otherwise provided for by amend-

ment to such By-Laws.  Prior to such annual meeting the books shall be closed as of the previous January 1st, and the profits divided (in proportion to the respective holding of stock), either in the form of dividends or in such other form as, at the time, may seem advisable."

The company was incorporated, and is one of the defendants in this action; the partnership property was duly conveyed and assigned to it, the stock and notes were issued pursuant to the contract, and the company has ever since been in successful operation.  It ' has paid for the past five years dividends of twenty per cent per annum on its capital stock, and now has an earned surplus of $1,182,261.37 invested in great part in a new plant and property used in carrying on the business.  The original partners have died, a portion of the stock held by them has been transferred to legatees under the will of Charles F. Zentgraf, and a portion is now held by their executors, who are parties defendant to this action.

The plaintiff, a party to the original contract, being the owner of 125 shares of the capital stock, has brought this action to recover a proportionate .share of the accumulated profits, and has been awarded judgment therefor against all the defendants, not only the corporation but the surviving signers to the contract (except plaintiff) and the representatives of the estate of those deceased.  The defendants have appealed to this court.

*Albert W. Meisel,* for the appellants.

*Allen C. Bragaw,* for the respondent.

BLACKMAR, J.:

The complaint in this action indicates a suit in equity.  The only relief which could be based on it would be a judgment in equity directing that the company should divide all its profits among the stockholders.  Whether the terms of the contract and constating instruments warrant such a judgment will be considered later.  But if the allegations of the complaint are proper to a suit in equity, the judgment is that of an action at law.  Nowhere in the complaint is there any allegation of an express promise on the part of the defendants, binding them jointly, to pay to the plaintiff an amount

equal to one-sixteenth of the earnings of the company; nor are there allegations of fact from which the law will imply a promise, neither is any such promise or obligation disclosed by the evidence nor found in the decision of the court. The original contract prescribed the plan of organization of the company, and provided that the profits of the company should be divided in proportion to the respective holding of stock, " either in the form of dividends or in such other form as, at the time, may seem advisable." Conceding, for the purpose of the argument, the construction of the contract claimed by the plaintiff, the agreement was only that the corporation should divide its profits. This requires action by the board of directors; and if the action can be maintained at all, it could only be in the form of a suit in equity to specifically perform the contract and compel the division according to its terms. The judgment in the case of *Lorillard* v. *Clyde* (86 N. Y. 384) was founded on a contract whereby for a good consideration the defendant guaranteed that plaintiff should receive certain dividends from the company. In this case there is nothing of the kind, and the judgment is not sustained by the findings of the court.

But I think that the action cannot be maintained in any form. It may be that all the stockholders in a private corporation can contract among themselves and with the company to control the action of directors in managing the affairs of the company, so long as such control violates no law and does not impair the rights of creditors (*Kassel* v. *Empire Tinware Co.*, 178 App. Div. 176, and cases there cited; *Park* v. *Grant Locomotive Works*, 40 N. J. Eq. 114; affd. on opinion, 45 id. 244), and that a court of equity has power to compel the declaration of a dividend. (*Hiscock* v. *Lacy*, 9 Misc. Rep. 578; 7 R. C. L., title " Corporations," § 269.) That power has usually been exercised only to prevent directors from violating the trust duty which they owe to stockholders by fraudulently abusing their discretionary power in the declaration of dividends. Here it is claimed that the corporation, by ratifying and adopting the contract between its promoters and corporators, has entirely lost the power, with which it is vested by the law of its organization, to determine in the best interests of the company what part

of its profits should be divided and what part in wisdom and prudence should be retained as surplus. The certificate of incorporation contains no limitation on the powers of the directors (Gen. Corp. Law [Gen. Laws, chap. 35; Laws of 1892, chap. 687], § 10, as amd. by Laws of 1895, chap. 672; now Gen. Corp. Law [Consol. Laws, chap. 23; Laws of 1909, chap. 28], § 10, subd. 2), and it has never been doubted that the power to manage the affairs of the corporation, vested in directors by the corporation law of the State, includes discretion in the declaration of dividends. (*Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162.) It is supposed that a wise and conservative exercise of that discretion is vital to the success of the corporation. But the plaintiff claims that the contract of 1905 has deprived the directors of their discretion, and that the profits must be divided even if the result is disaster to the company, and this although the stock may finally come into the hands of owners who are not parties nor privies to the contract. If a contract among corporators can be so framed as to accomplish this result, which is at the best doubtful (*Drucklieb* v. *Harris*, 209 N. Y. 211), it must at least be so explicit in its terms as to admit of no other construction. The contract in question falls far short of this. The contract provided that a company using a working capital of $1,200,000, should procure that amount by issuing a share capital of $200,000, and notes to the amount of $1,000,000. Now, nothing in this record shows the due date of these notes; but, sometime or other, they must be paid. If all the profits are to be divided annually, in time, with the payment of these notes, the working capital will be reduced to $200,000. This would mean disaster to a company with $1,150,000 invested in plant, stock on hand and outstanding accounts. Did the men who had built up the business and devised the complicated plan of continuing it as a family concern intend to accomplish this result? Have they used such words in the contract that this court is compelled to impute such intention to them? I think not. The words are these: " Prior to such annual meeting, the books shall be closed as of the previous January 1st, and the profits divided (in proportion to the respective holding of stock), either in the form of dividends or in such other form as, at the time, may seem advisable."

Obviously, the very wording of this clause recognizes some discretion in the directors. It certainly did not mean obligatory distribution in cash. As to the form of division, it is left to discretion. The clause cannot be given a literal meaning. I know of no way in which profits of a corporation can be divided except in the way of dividends. So-called stock dividends are not a division of profits, but they result in the stockholder's share in the corporate property being expressed by a different fraction, and not in altering its value. (*Williams* v. *Western Union Telegraph Co., supra.*) It is not necessary to hold that the word " profits " means all the profits earned. A not unreasonable interpretation is that the intent was to provide that the company should have discretion as to the form in which dividends should be declared, and that they need not be in cash, but, for illustration, might be in warrants or scrip, or possibly in property. In view of the fact that an interpretation which compels the directors to distribute all profits would be contrary to the law of the company's organization, subversive of the company's best interests, and, as could easily be foreseen, would probably lead to bankruptcy, this court may well adopt another interpretation which gives a reasonable meaning to the words and at the same time avoids a result which plainly the parties did not contemplate nor desire. For eleven years the parties in interest have acquiesced in and acted on the interpretation of the contract which leaves to the directors a discretion in determining whether all or a portion of the yearly earnings should be divided. This contemporaneous interpretation by the action of the parties in interest is entitled to great, almost controlling, weight. For eleven years the parties, including the plaintiff, have acted on the assumption that a proper surplus should be accumulated, and that the directors had power to do it. Relying on this assumption, the business has been extended, a new and costly plant built, and all the capital and surplus invested in a going and profitable business. To permit the plaintiff at this late date to reverse his position, and successfully assert a claim destructive of the interest of all, himself included, would be opposed to fundamental principles of equity.

I think that the contract of April 1, 1905, and the consequent organization and acts of the company, do not require

the division of the profits except as the directors may, in the exercise of a wise discretion, declare.

The finding of fact numbered XXI, and all the conclusions of law made by the court are reversed. The findings of fact proposed by defendants, numbered XIII, XX, XXIV, XXVI, XXVII, XXVIII, XXIX, XXXI, are found; defendants' proposed finding of fact numbered XXI, modified to refer to a portion of the corporate notes, is found, and this court finds as a conclusion of law that the directors of the defendant company have the power, acting in good faith, in the interests of the corporation and stockholders, to determine what portion of the profits of the company shall be divided among the stockholders; that the defendants are not liable to the plaintiff for any sum representing his interest in the undivided profits of the company.

The judgment is reversed and the complaint dismissed on its merits, with costs.

JENKS, P. J., MILLS, RICH and KELLY, JJ., concurred.

Judgment reversed and complaint dismissed on the merits, with costs.